LOUISE D. HOUGHTON & others *vs*. PAUL BUTLER
& another, administrators.

JOSEPH H. BOND *vs*. SAME.

HERBERT M. KNAPP *vs*. SAME.

JOHN THOMPSON *vs*. SAME.

Middlesex.   January 21, 22, 1896. — September 16, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*False and Fraudulent Representations — Damages in Equity — Survival
of Remedy.*

A bill in equity, brought on February 4, 1895, asked for no relief peculiar to courts
of equity, but merely for compensation in damages for alleged false and fraudu-
lent representations made by an agent of the defendant's testate about nine
years before the filing of the bill, whereby the plaintiff or his assignor was in-
duced to part with certain equitable interests in lands at less than their value.
The testate died on January 11, 1893.   There was no allegation in the bill that
the estate received by the defendant from his testate had been benefited by the
fraud, and there was nothing to show that the testate was more than a naked
trustee in fee.   *Held*, that the cause of action did not survive, and that the bill
could not be maintained.

FOUR BILLS IN EQUITY, praying that the defendants be com-
pelled to make restitution in damages for alleged false and
fraudulent representations made by an agent of their testate,
whereby the plaintiffs or their assignors were induced to part
with certain equitable interests in lands at less than their
value.

. The defendants demurred to the bills, assigning, among other
things, as a ground therefor, that the cause of action set forth
therein did not survive.   The cases were reserved by *Knowlton*,
J., upon the bills and demurrers, for the consideration of the
full court.

*L. S. Dabney*, (*F. L. Washburn* with him,) for the defendants.
*A. Maltby*, (of New York,) for the plaintiffs.

LATHROP, J.   These bills in equity ask for no relief peculiar
to courts of equity, but merely seek for compensation in dam-
ages for alleged false and fraudulent representations made by an

agent of the defendants' testate about nine years before the filing of the bills, whereby the plaintiffs or their assignors were induced to part with certain equitable interests in lands at less than their value.

. The first question in each case is whether the cause of action survived, the testate having died on January 11, 1893, and these bills having been brought on February 4, 1895. Such a cause of action does not survive in equity, unless the personal representatives have received an estate benefited by the fraud, or unless the person committing the fraud holds towards the person defrauded a fiduciary relation.

There is no allegation in any of these bills that the estate received by the defendants has been benefited by the fraud. *Phillips* v. *Homfray*, 24 Ch. D. 439, 454. *Peek* v. *Gurney*, L. R. 6 H. L. 377, 392–395.

The question then arises whether the testate held such a fiduciary relation towards the plaintiffs or their assignors, at the time the false representations were made, that these bills should be maintained. See *Warren* v. *Para Rubber Shoe Co.*, *ante*, 97. It is alleged that, in 1882, he and they were bondholders in a corporation called the Colorado Cattle Company, which company had mortgaged its lands to secure certain bonds; that a suit had been brought to foreclose the mortgage, and a decree entered that the lands be sold by public auction; that in November, 1882, the testate caused a circular letter to be issued, stating that he would buy in the property at the foreclosure sale, and for such of the bondholders as might choose to come into the arrangement, holding the same in trust for them in the proportions in which they severally held the company's bonds, and that, should all the bondholders agree to this, he would bid, if necessary, up to the face value of the bonds; otherwise, that he proposed to buy in the properties himself at the lowest price possible, and wished the bondholders to be so informed.

The bills further allege that the plaintiffs or their assignors paid in their proportion of the purchase money to the testate's agent; that the sale was made on December 11, 1882, and the testate purchased the lands, and they were conveyed to him as trustee by deed dated December 15, 1882, and recorded August 3, 1885; and that, down to the time of his death, he managed and

controlled the property without any transfer or any accounting to the bondholders. There is no allegation that any declaration of trust was made, or what was the nature of the trust. So far as appears, the testate was a mere depositary of the title for himself and others. The allegation that he took possession of the land and managed it is as consistent with an adverse holding as with a holding as trustee. There is no allegation that he was to do more than bid in the land, and pay for it with his own money and that of the other bondholders.

While the conduct of the testate's agent in 1885, in depreciating the value of the property by false and fraudulent representations, would justify a rescission of the contract or an action for damages, it does not follow that such conduct was the breach of any fiduciary relation. There is nothing to show that the bondholders intrusted the testate with the management of the property, or that they accepted his services for any other purpose than a mere purchase of the land. When he bought the property, the bondholders had a right to demand conveyances of their interests. Incidentally to such right, the testate would have to account to them for any profits received by him. So far as appears, no conveyances were demanded, and no accounting was asked for. There is nothing to show that he was more than a naked trustee in fee for the bondholders in fee, and owed them no duty save that of making a conveyance, and accounting to them for profits at that time, if there were any.

The cases do not come within the rule laid down in *Barnes* v. *Boardman*, 152 Mass. 391, that a purchase by one tenant in common of an outstanding encumbrance is deemed to be for the benefit of all. One who, as a *cestui que trust*, has an unconditional right to an immediate transfer of land, is in effect an absolute owner. *Sears* v. *Choate*, 146 Mass. 395. *Underwood* v. *Boston Five Cents Savings Bank*, 141 Mass. 305. The assignors of the plaintiffs stood in this position in respect to their several interests. They sold them to a broker, without inquiring who was his principal. Being a naked or dry trustee, the testate had a right to deal with his *cestuis que trust*, and the cause of action for which the plaintiffs seek to recover did not survive. Hill on Trustees, 317. Perry on Trusts, § 199. *Parkes* v. *White*, 11 Ves. 209, 236. *Pooley* v. *Quilter*, 4 Drew. 184; 189, 190. *Naylor* v.

*Winch,* 1 Sim. &Stu. 555, 567.    *Read* v. *Hatch,* 19 Pick. 47.    *Cutting* v. *Tower,* 14 Gray, 183.    *Leggate* v. *Moulton,* 115 Mass. 552.

Without considering the other questions raised by the demurrers, we are of opinion that in each case the entry must be,

*Demurrer    sustained ;    bill    dismissed.*