RALPH JAMES M. BULLOWA *vs.* GEORGE W. GLADDING, *Executor* of the *Will* of ARDELIA C. DEWING.

MARCH 14, 1917.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(*1*)   *Survival of Action.   Deceit.*

A cause of action for deceit survives the death of the wrongdoer and can be maintained against the executor.

(*2*)   *Survival of Action.   Deceit.   Personal Estate.*

An action for deceit alleging false and fraudulent representations of defendant's testatrix, causing loss by reason of the purchase of worthless stock, is within Gen. Laws, 1909, cap. 283, § 7, providing for the survival of the death of either the plaintiff or defendant, of an action of trespass on the case "for damages to personal estate," and may be originally prosecuted against the executor.

(*3*)   *Survival of Action.   Personal Estate.*

The words "personal estate," as used in Gen. Laws, 1909, cap 283, § 7, providing for the survival of the death of either the plaintiff or defendant of an action of trespass on the case "for damages to personal estate," should be construed to mean every species of property not of a freehold nature, including not only goods and chattels, but rights and credits also.

(*4*)   *Survival of Action.*

The rights of action under Gen. Laws, 1909, cap. 283, by and against executors and administrators, are reciprocal, and actions which would survive in favor of an executor or administrator of the injured person survive against the executor or administrator of the wrongdoer.

VINCENT, J., dissenting.

TRESPASS ON THE CASE for deceit.   Heard on exceptions of plaintiff and sustained.

Parkhurst, J. This is an action of trespass on the case for deceit.

The plaintiff in his declaration sets forth that the said Ardelia C. Dewing, in April, 1914, made certain false and fraudulent representations with relation to the financial condition of the M. Dewing Company, a corporation, then carrying on business in Providence, Rhode Island; that she stated that it was the owner of property of great value in and leases of oyster beds in Connecticut and in Rhode Island, and in certain real estate, plant and equipment at New Haven, Connecticut, and at Providence, Rhode Island, and what its assets and liabilities were and how it had provided for the redemption of its preferred stock of fifteen hundred shares, of the par value of $150,000, by insurance aggregating $150,000 on the lives of its officers; and " that said . . . corporation had assets greatly in excess of all its liabilities and its capital stock and was in a sound financial condition; and that its preferred stock was worth more than its par value;

"And the plaintiff avers that all said representations were not only untrue, but were made by the said Ardelia Cook Dewing with knowledge of their falsity and with the intention that the plaintiff should believe them and act in reliance upon their truth;

"And the plaintiff further avers that he did not know of the falsity of said representations but believed them and each of them to be true, and in reliance upon the truth of said representations and each of them he was thereafter induced by said Ardelia Cook Dewing to buy and did buy of said The M. Dewing Company twenty-nine (29) shares of its preferred stock and paid therefor a large sum of money, to wit the sum of twenty-nine hundred dollars ($2900) on the tenth day of.September, 1914, at Providence aforesaid, which said shares of stock were

then and are still of no value, said corporation being wholly insolvent, whereas if the aforesaid representations had been true, said shares would have been worth at least as much as the plaintiff paid for them; in consequence whereof the plaintiff has wholly lost said large sum of money paid for said shares as aforesaid and the interest thereon from said tenth day of September, 1914.''

The plaintiff further avers the death of said Ardelia C. Dewing on the 21st day of March, 1915, and the appointment of said defendant George D. Gladding as executor under her will on the 23d day of April, 1915; that on July 22d, 1915, he filed his claim against Mrs. Dewing's estate in the Municipal Court in the amount of $4,000; and that said claim was disallowed by the executor on the 6th day of October, 1915. This suit was brought by writ dated March 23d, 1916, and served March 27th, 1916, against said Gladding as executor of the will of Ardelia Cook Dewing.

The declaration contains a second count in substantially the same terms except as to the second paragraph of said second count, which is as follows: ''And the plaintiff avers that all said representations were untrue and were made by said Ardelia Cook Dewing positively, as of her own knowledge, when she did not in good faith believe them to be true and knew of facts and circumstances sufficient to charge her with knowledge of the falsity of said representations, which were made by her with the intention that the plaintiff should believe them and act in reliance upon their truth.''

The defendant filed a demurrer to each of said counts, stating as cause of demurrer, '' that said count does not set forth a cause of action which survived the death of Ardelia Cook Dewing.'' . . .

After hearing upon the demurrer in the Superior Court sitting in Providence, the demurrer was sustained; the

plaintiff took exception to the decision sustaining the demurrer, and in due time prosecuted his exception to this court, and the case is now before this court upon his bill of exceptions.

(1)    The sole question raised before this court therefore is whether the cause of action survives the death of Mrs. Dewing and whether the action can be maintained against her executor.

Our statute providing for the survival of actions, in addition to those which survive by the common law, appears in the revision of 1844, being the first revision of our laws after the adoption of our State Constitution (Pub. Laws of R. I., 1844, pp. 132-133, § 25). So far as need be here considered it reads as follows: " Sec. 25. In addition to the actions which survive by the common law, the following shall also survive, viz.: actions of replevin and trover; actions of waste; actions of trespass for assault, battery, imprisonment, or for goods taken and carried away; and actions of trespass and trespass on the case for damages done to real or personal estate."

In the next revision of our laws (Rev. Stats. 1857, Chap. 176, § 10, p. 426) this language was changed and reads as follows: " Sec. 10. In addition to the causes of action and actions which survive at common law the death of the plaintiff or defendant therein, the following causes of action and actions shall also survive: —

" *First.* Causes of action and actions of waste;

" *Second.* Causes of action and actions of replevin and trover;

" *Third.* Causes of action and actions of trespass and trespass on the case for damages to the person, or to real and personal estate."

This statute of 1857 has been reënacted in all subsequent revisions with some slight verbal changes and additions, but with no substantial change down to the last revision in 1909. General Laws of 1909, Chapter 283,

provides as follows: " Sec. 7. In addition to the causes of action and actions which at common law survive the death of the plaintiff or defendant therein, the following causes of action or actions shall also survive:

" *First.* Causes of action and actions of waste.

" *Second.* Causes of action and actions of replevin and trover.

" *Third.* Causes of action and actions of trespass and trespass on the case for damages to the person or to real and personal estate.

" Sec. 8. All the causes of action and actions in the preceding section mentioned may be originally brought and prosecuted by and against executors and administrators; and if brought or prosecuted by or against any person in his lifetime, may be prosecuted or defended by his executor or administrator.

" Sec. 9. Whenever any of said causes of action or actions are, originally or by survival, brought or prosecuted by or against the executor or administrator of the party originally liable, the plaintiff shall be entitled to recover only the value of the goods taken, or the damage actually sustained, without any vindictive or exemplary damages, or damages for any alleged outrage to the feelings of the injured party."

The statute in substantially its present form has been several times before this court for the determination of its construction and effect and was very carefully and fully considered. See *Aldrich* v. *Howard,* 8 R. I. 125; *Reynolds* v. *Hennessy,* 17 R. I. 169; *Aylsworth* v. *Curtis,* 19 R. I. 517.

*Aylsworth* v. *Curtis, supra,* was brought in the lifetime of plaintiff Aylsworth to recover of the defendant Curtis, who had been convicted of larceny from Aylsworth of certain personal property, double the value of that property under Pub. Stat. R. I., 1882, cap. 204, § 22, which provides that " Whenever any person shall

be convicted of larceny, he shall be liable to the owner
of the money or articles taken for twice the value thereof,
unless the same be restored, and for the value thereof in
case of restoration.'' Subsequently to the commence-
ment of the action plaintiff died, and the defendant
pleaded the death of the plaintiff in abatement. The
plaintiff's. executors thereupon entered their appearance
in the case and filed a demurrer to the defendant's plea,
and the question presented by the demurrer was whether
the cause of action survived the plaintiff's death. The
statute relating to survivals of action (Pub. Stat. 1882,
(2) Chap. 204, § 8) quoted in the case, was in all essential
respects the same as the statute of 1909 above quoted.
The court, per Tillinghast, J., p. 518, proceeds as follows:
'' The statute relating to the survival of actions, Pub.
Stat. R. I., cap. 204 § 8, is as follows, viz.: ' In addition
to the causes of action and actions which survive, at com-
mon law, the death of the plaintiff or defendant therein,
the following causes of action and actions shall also sur-
vive: *First.* Causes of action and actions of waste. *Sec-
ond.* Causes of action and actions of replevin and trover.
*Third.* Causes of action and actions of trespass and tres-
pass on the case for damages to the person or to real
and personal estate.'

'' We think this statute is clearly broad enough to in-
clude the case before us unless the action is a penal one,
which we will consider later. The cause of action is the
damage done by the defendant to the personal estate of
the plaintiff in feloniously depriving him of. the prop-
erty set out and described in the indictment. And it cer-
tainly cannot be seriously contended that the larceny of
personal property from the plaintiff did not result in a
direct and immediate damage to his personal estate.
This statute was fully considered in *Aldrich* v. *Howard,* 8
R. I. 125, where it was held that it ' provides not only for
cases of trespass, where the injury is not only the direct

but the immediate effect of a wrongful act forcibly done, but for actions of the case, where the damages are not immediate, but, to be recoverable, must be the natural and proximate consequence of the wrongful act alleged.' If an action on the case for creating a nuisance, whereby the plaintiff in that case suffered damages to his hotel, survives under the statute, *a fortiori* the action now before us, which is brought to recover damages for the larceny of the plaintiff's personal property, survives also. In *Reynolds* v. *Hennessy,* 17 R. I. 169, it was held that damages by a wrongful act to something recognized as personal estate gives rise to an action which survives both for and against an executor or administrator under said statute. In discussing the question of the survival of the action in that case, the court said: ' We think it is clearly deducible from all the cases that, where there is simply a tort, not otherwise affecting the estate itself than by an *indirect* loss, an action *ex delicto* does not survive. . . . The difficulty generally is in drawing the line between tortious acts which *must* be held to damage one's personal estate and those which do not.' The case at bar is clearly one where the act complained of *must* be held to damage the personal estate of the deceased, and hence the action survives under the decision just referred to, unless it be held to be a penal action as aforesaid.'' The court then proceeds to decide that the action is not a penal action, and holds that it survives the death of the plaintiff.

*Reynolds* v. *Hennessy,* 17 R. I. 169, considered the same statute as to survival of actions; it was an action of trespass on the case for deceit consisting of false, fraudulent and deceitful conduct and representations on the part of the defendant Hennessy whereby the plaintiff's intestate James Reynolds had been deprived of his vendor's lien upon a certain piece of real estate. It was held in substance that a vendor's lien was personal

estate, and that the plaintiff's intestate having been deprived thereof by the fraudulent and deceitful conduct and representations of Hennessy, to the damage of the plaintiff's intestate, the cause of action survived to Reynolds' administrator, and also survived as against the administrators of Hennessy.  In the suit of *Reynolds* v. *Hennessy* the vendor's lien of which the plaintiff's intestate was deprived was a *chose in action,* which would have enabled James Reynolds, if he had not lost it through the unlawful conduct of Hennessy, to recover the balance of money due him on foreclosure sale under a mortgage held and foreclosed by Hennessy.  If such a loss as was held in that case was a damage to personal estate under the statute of survivals, we are unable to see how it can be claimed in the case at bar that the loss to the plaintiff of the sum of $2,900 by reason of his purchase of worthless stock consequent upon the false and fraudulent representations of the defendant's testatrix is not equally a damage to the plaintiff's personal estate; it is as much a direct loss to plaintiff's estate in this case as was the loss of goods in the *Aylsworth* case, or as the loss of a vendor's lien in the *Reynolds* case.  By the purchase of preferred stock in the case at bar, the plaintiff acquired a right to participate in the distribution of the surplus assets of the M. Dewing Company on liquidation of that company after payment of its debts.  Upon the representations of the defendant's testatrix he was entitled to believe and did believe (upon the face of the declaration) that the stock was worth what he paid for it; it turns out to be worthless; surely his personal estate is as much and as directly damaged by this loss of money as was the estate of James Reynolds when he was deprived of a lien by means of which his administrator could have recovered what was due to the intestate.

The question before us in this case is whether this action is an action of "trespass on the case for dam-

ages " . . . " to personal estate." We are of the
(3) opinion that the words " personal estate " in this statute
should have what appears to us to be their plain and
obvious construction, *viz.:* " every species of property
not of a freehold nature, including not only goods and
chattels, but rights and credits also." See 32 Cyc. 666,
667.

The case of *Bellows* v. *Adm'r. of Allen,* 22 Vt. 108
(cited in *Reynolds* v. *Hennessy, supra*), was a suit in
trespass on the case brought against the defendant Allen,
in his lifetime, as sheriff, for the default of his deputy in
not paying to the plaintiff money collected and received
by the deputy upon an execution in favor of the plaintiff.
Allen, the sheriff, died while the suit was pending, and
his administrator moved to dismiss the suit upon the
ground that the cause of action did not survive. It ap-
peared that the money collected by the deputy had never
in fact been received by Allen; the County Court dis-
missed the suit, and the plaintiff excepted.

The Supreme Court of Vermont, holding that this ac-
tion survived the death of the defendant and could be
prosecuted against his administrator, used the following
language: " Section 10 of Chapter 48 declares, that, ' in
addition to the actions which survive by the common law
the following shall survive and may be commenced and
prosecuted by the executor, or administrator, that is to
say, actions of ejectment, or other proper actions to re-
cover the seizin and possession of lands, actions of
replevin and trover, and *actions of trespass and trespass
on the case for damages done to real and personal estate.'*
The twelfth section of the same chapter makes the rem-
edies by and against executors and administrators recip-
rocal, so that any cause of action, which would survive in
favor of an executor, or administrator, is declared to sur-
vive against him. If the administrator of the plaintiff,
in this case, could maintain the action against the sheriff,

while in life, for this default, then the administrator of the sheriff must be held liable.

" I entertain no doubt, that the cause of action in this case would have survived to the administrator of the plaintiff. The last clause of the tenth section of the statute before recited gives to executors and administrators the actions of ' trespass and trespass on the case for damages done to real or personal estate.' The word ' *personal,*' in this clause, is contrasted with the word ' *real,*' and the term ' *personal estate,*' in the connection in which it is used, must be understood to embrace every species of property not of a freehold nature, including not only goods and chattels, but rights and credits also. Such is the ordinary legal signification of the term. In that sense the words ' *personal estate* ' are generally, if not universally, used throughout the Revised Statutes. Thus, the statute provides in one section, that real estate may be disposed of by will, and in another that ' *personal estate* ' may be disposed of in the same manner; noncupative wills of ' *personal estate* ' are allowed; a soldier may by such will dispose of his *wages,* or other ' *personal estate;* ' the ' *personal estate* ' of an intestate is first made chargeable with his debts, and when the ' *personal estate* ' is found insufficient, real estate is to be sold for their payment. In all these and numerous other instances, which might be mentioned, the words personal estate are evidently used to embrace every description of property, not coming under the denomination of real estate. And I apprehend there can be no doubt whatever, that the legislature, in passing the statute giving the actions of trespass and trespass on the case for damages done to personal estate, intended to furnish a remedy for injuries done to the rights and credits of a testator, or intestate, as well as to his specific goods and chattels.

" The value of a debt due, as well as of a tangible article of property, may be impaired, or destroyed, by the

act or neglect of another; and the owner of such debt would suffer damage thereby, for which he might always have had a remedy by action. The framers of the statute intended such remedy should survive to the representative of him, who had suffered the damage. If the plaintiff's administrator were now suing for the sheriff's default, the action would be one of that description. The act of the defendant, by his deputy, in collecting the money in discharge of the plaintiff's debt and neglecting to pay it over, is a plain and manifest damage to the plaintiff's personal estate, the remedy for which would survive to his administrator by the statute; and surviving to him, it would consequently survive against the estate of the defendant, who committed the injury.''

This language just quoted well expresses the view of this court both as to the broad meaning of the words '' personal estate,'' and as to the intention of the legislature in passing the act here under consideration.

The defendant's counsel relies very much upon the case of *Read et al.* v. *Hatch,* 19 Pick. 47 (1837), and upon several cases in Massachusetts and elsewhere which follow that case.

*Read et al.* v. *Hatch* was an action on the case, brought by the plaintiffs, merchants in Boston, against the defendant, who resided in Bangor, Maine, charging that the defendant falsely and fraudulently recommended another person as a trader in good credit and worthy to be intrusted with goods, by reason of which representations the plaintiffs were induced to sell him goods on credit and thereby sustained damage.

Pending the suit the defendant died and plaintiffs moved to cite in his administrator. This motion was resisted by an *amicus curiæ* on the ground that the action did not survive under the statute of Massachusetts (Rev. Stat. 1836, c. 93, § 7), which provided that '' actions of trespass and trespass on the case for damage done to

real or personal estate " shall survive. The court said: " Shaw, C. J. The question whether the plaintiffs can cite in an administrator and proceed with their action, depends on Revised Stat., c. 93, § 7. It is contended that a false representation, by which one is induced to part with his property, by a sale on credit to an insolvent person, by means of which he is in danger of losing it, is a damage done to him in respect to his personal property. But we are of the opinion that this would be a forced construction, and not conformable to the intent of the statute. If this were the true construction, then every injury by which one should be prevented from pecuniary gain, or subjected to pecuniary loss, would, directly or indirectly, be a damage to his personal property. But we are of opinion that it must have a more limited construction, and be confined to damage *done* to some specific personal estate, of which one may be the owner. A mere fraud or cheat, by which one sustains a pecuniary loss, cannot be regarded as a damage done to personal estate.

" The action is abated at common law, by the death of the defendant, and not surviving by force of the statute, must be deemed to stand abated."

This case seems to have been followed or approved in several other Massachusetts cases. See *Cutting* v. *Tower*, 14 Gray 183; *Leggate* v. *Moulton,* 115 Mass. 552; *Houghton* v. *Butler,* 166 Mass. 547; *Jenks* v. *Hoag,* 179 Mass. 583; in each case reaffirming the general doctrine of *Read* v. *Hatch,* that " a mere fraud or cheat, by which one sustains a pecuniary loss, cannot be regarded as a damage *done* to personal estate."

It will be noted that in *Read* v. *Hatch* the decision seems to rest wholly upon the words of the statute, " *damage done* to . . . personal estate," and that therefrom a rather narrow construction of the statute has arisen. In *Cutter* v. *Hamlen,* 147 Mass. 471, which was an action against a landlord for deceit in letting a

dwelling house infected with diphtheria, causing injuries to the persons who occupied under the lease, and where it was held that the action survived against the defendant's executor, the court said, through Holmes, J., 147 Mass., page 472: " If we assume, as is argued on behalf of the executor, that both counts of the declaration are counts in deceit, it does not follow that the action will not survive. It is settled in this Commonwealth, that the provisions of the Pub. Sts., Chap. 165, § 1, that actions for ' damage done to real or personal estate ' shall survive, does not apply to mere impoverishing of a man's estate generally, but requires that damage to some specific property should be alleged and proved. *Read* v. *Hatch,* 19 Pick. 47; *Leggate* v. *Moulton,* 115 Mass. 552. In England a more liberal rule seems to have been established. *Twycross* v. *Grant,* 4 C. P. D. 40. But *Leggate* v. *Moulton* implies, as plainly as the English cases decide, that an action for injury to specific property — and by the same reasoning under our statute an action for injury to the person — will survive as well when the wrong is brought to pass by fraud as when it is done by force. See *Hatchard* v. *Mège,* 18 Q. B. D. 771; *Oakey* v. *Dalton,* 35 Ch. D. 700."

In view of this narrow construction of the Massachusetts statute due apparently to the emphasis laid upon the words " *damage done,*" &c., we do not feel that these cases should have any persuasive force with this court in the construction of our statute above quoted where the broader language is " causes of action and actions of trespass and trespass on the case for damages to the person or to real and personal estate."

It should be noted at this point that the original words of our original statute (Pub. Laws, 1844, p. 132, § 25) above quoted, " actions of trespass and trespass on the case for damages *done* to real or personal estate," are identical in effect with the words of the Massachusetts statute, " damage *done* to real or personal estate; " that

in Rev. Stat. of 1857, above quoted, the word " done " is left out, and the language is broadened to include " *causes of action* and actions of trespass and trespass on the case for damages *to the person,* or to real and personal estate." These changes are material and substantial in that they include " damages to the person " not previously mentioned; they leave out the word " done," which appears in *Read* v. *Hatch, supra,* to have been regarded as an important and controlling word confining the application of the statute " to damage *done* to some specific personal estate; " they also add the words " *causes of action;* " thereby broadening the statute to include expressly not only actions already commenced before the death of a party, but causes of action which previously existed, where action was not commenced or defended in the lifetime of the party deceased, but after his death by or against an executor or administrator. We think it is to be inferred from these changes of language that our legislature thereby intended to broaden the scope of the statute relating to survival of actions as we have heretofore set forth.

The defendant also cites *Jones* v. *Estate of Ellis,* 68 Vt. 544, which was for deceit in the sale of stock, somewhat like the case at bar, under a statute of Vermont in the same words as the Massachusetts statute above referred to in *Read* v. *Hatch.* The opinion is short, and no cases are cited, although it would seem that the court followed the doctrine of *Read* v. *Hatch* and other Massachusetts cases which were cited by counsel; the court says, page 547: "A fraud committed by one, the result of which creates a *liability* upon another to pay money, is not such a damage done to the latter's personal estate as will create a cause of action which survives."

*Killen* v. *Barnes,* 106 Wis. 546, 560, expressly follows the case of *Read* v. *Hatch* in the construction of a statute of Wisconsin of the same terms as that of Massachusetts.

*Stebbins* v. *Dean,* 82 Mich. 385, also follows the Massachusetts doctrine above set forth in construing the same statutory language.

Other cases cited by defendant's counsel do not appear to be applicable to the case at bar. We do not find in any of the cases cited by defendant's counsel, relating as they do to statutes of the same language and purport as in *Read* v. *Hatch,* such weight as to lead us to attempt to apply them in the construction of our own statute.

We find support for the plaintiff's contention, that this action survives, in certain cases both in England and in this country.

In *Twycross* v. *Grant,* 4 C. P. D. 40 (1878), the English Court of Appeal held that an action in all respects similar in its legal aspect to the case at bar survived to the administratrix of the plaintiff. The action was brought by the plaintiff James Twycross against Grant and others to recover back £700, the price of shares in a joint stock company, on the ground that he had been induced to buy the shares in question by the fraudulent suppression by the defendants, the promoters of the company, in the prospectus published by them, of certain contracts which ought to have been disclosed therein pursuant to Section 38 of the Companies Act, 1867 (30 & 31 Vict., c. 131).

After the case had been tried to a jury and a verdict for plaintiff had been had, and judgment for the plaintiff had been sustained by the Court of Appeal, and pending an appeal to the House of Lords, the plaintiff died, his administratrix duly appointed and qualified was ordered to " be made a party to the action, and that she be at liberty to carry on and prosecute the same against the defendants." This order was contested before the Common Pleas Division and was sustained in favor of the administratrix; and defendants appealed. In the Court of Appeal it was held that the action survived, and the appeal was dismissed; all three judges concurred. We

11

quote the whole opinion of Bramwell, L. J., because it shortly summarizes the English law with regard to survivals of action under the Stat. 4 Edw. 3, c. 7, and 3 & 4 Wm. 4, c. 42, § 2.

" Bramwell, L. J. In my opinion this appeal must be dismissed. It is clear that at common law the rule as to torts was correctly expressed by the maxim, '*Actio personalis moritur cum personâ.*' This rule was greatly altered at an early stage of our legal history by 4 Edw. 3, c. 7, and this statute being remedial in its nature, and also those amending it, have been construed very liberally; they have been held to extend to all torts except those relating to the testator's freehold, and those where the injury done is of a personal nature. And it has been held that an action will lie at the suit of an executor against a sheriff for a false return in the lifetime of the testator; *Williams* v. *Cary* (2); and also for an escape; *Berwick* v. *Andrews* (3); and the reason is that by these wrongs the value of the testator's personal estate was diminished. This has been established for centuries, and the rule of law has been made still clearer by the legislature, which by 3 and 4 Wm. 4, c. 42, § 2, has given a more extended remedy to and against executors for wrongs committed during the lifetime of their testators; for it seems to have been assumed at the time of passing that statute, that an executor was entitled to maintain an action for any wrong whereby the personal estate had been injured. It has been contended that special damage to the estate ought to be pleaded, or at least shewn, before an executor can sue: I do not think so; it will be sufficient if, from the nature of the injury, it must diminish the personal assets. The counsel for the defendant has relied also on the judgment of Lord Chelmsford in *Peek* v. *Gurney* (1); amongst the questions argued before the House of Lords it had been contended that the executors of a deceased director of a company were liable

for the injury occasioned by his misrepresentations as to its solvency. Lord Chelmsford held that they were not liable; but the ground of his decision appears to have been that the director's ' estate derived no benefit from the misrepresentation to which he was a party,' and no doubt was thrown upon the authorities shewing that an executor may sue for a wrong committed to the personal estate of the testator during his lifetime; moreover, apart from 3 & 4 Wm. 4, c. 42, s. 2, a wide distinction exists between the liability of an executor to be sued and his right to sue. It was also suggested that the rights of an administrator stood upon a different footing from those of an executor; but this contention was not seriously persisted in. In 3 & 4 Wm. 4, c. 42, s. 2, executors and administrators are put upon the same ground with respect to the remedies created by that enactment; and this course would not have been adopted by the legislature, if it had not been clear that at the time of passing the statute the rights of executors and administrators were the same. I am satisfied that the administratrix was rightly made a party to the action.''

The distinction noted in the above case, as well as in *Peek* v. *Gurney*, L. R. 6 H. L. 377, 392, 393 (therein cited) as between the maintenance of suits by survival *by* executors or administrators, and the maintenance of suits by survival *against* executors and administrators, may well be said to rest upon the limited nature of the right of survival of actions *against* executors and administrators of any person deceased under 3 & 4 Wm. 4, c. 42, s. 2 (which see), where the right is limited to an action of trespass or trespass on the case for any wrong committed by a person deceased '' in his lifetime to another in respect of his Property, Real or Personal, so as such Injury shall have been committed within Six Calendar Months before such Person's Death, and so as such Action shall be brought within Six Calendar Months after

such Executors or Administrators shall have taken upon themselves the Administration of the Estate and Effects of such Person; " . . . Upon a careful examination of *Peek* v. *Gurney, supra,* it appears that it was an equity case, and so for that reason not within the provision of said statute; it further appears that the wrong, claimed to have been done by the deceased whose executor was made a party and who was held not liable, was done, if at all, more than a year prior to his decease; and that this suit was not brought till more than a year after his decease.

(4)     There is no such distinction under our statute as above quoted. The rights of action by and against executors and administrators under our statute are reciprocal; and actions which would survive in favor of an executor or administrator of the injured person survive against the executor or administrator of the wrongdoer. See *Bellows* v. *Admr. of Allen,* 22 Vt. 108, 110; *Reynolds, Adm'r.* v. *Hennessy,* 17 R. I. 169; *Baker's Adm'r.* v. *Crandall,* 78 Mo. 584, 588, 589. For further illustration of the liberality of the English rule regarding survival of action for damages to personal estate, see *Hatchard* v. *Mège et al.,* 18 Q. B. D. 771 (1887), approving *Twycross* v. *Grant, supra.* See, also, *Oakey* v. *Dalton,* 35 Ch. D. 700 (1887).

In *Baker's Adm'r.* v. *Crandall,* 78 Mo. 584 (1883), an action for deceit against the promoters of a corporate scheme for false representations made by those holding themselves out as promoters and managers of the business as to the material facts of inducement and as to matters peculiarly within their knowledge, whereby the plaintiff's intestate was induced to invest a large sum of money in worthless stock of the corporation and suffered damage thereby, it was held that the action brought originally by Baker, survived after his death pending suit, to the administrator, both under the statute of Missouri,

and under the common law as modified by the statutes of
4 Edw. 3, c. 7, and 31 Edw. 3, c. 11.·

On page 588 of 78 Mo. the court says: "It may be con-
ceded that by the old common law prior to 4 Edward III,
c. 7, and 31 Edward III, c. 11 — the general rule in cases
of torts and in actions *ex delicto,* was that upon the death
of either party, the right of action did not survive to or
against the personal representative of either. But by
these statutes, which were passed long before the emigra-
tion of our ancestors, and which, under the authorities
above cited, constitute a part of the common law, this
rule was altered in its relations to personal property and
in favor of the personal representative of the party in-
jured. The extent and effect of that alteration, as gath-
ered from a careful examination of the numerous author-
ities, may, we think, without going into particulars, be
briefly stated thus: Under the operation of these stat-
utes, and the adjudications thereunder, it was held that
the cause of action for any wrong to personal property,
by which it was rendered less beneficial to the injured
party, survived to his personal representative. It was
also held that wrongs contemplated by these statutes
were not limited to injuries to specific articles of personal
property, but extended to other wrongs by which his per-
sonal estate was injured or diminished in value," *etc.*
Again, on page 589 of 78 Mo. the court says: "In this
connection we may further add that in *Higgins* v. *Breen,* 9
Mo. 497, 499, this court, in treating of the scope and effect
of the English statute of 4 Edward III, above cited, and
of the wrongs and injuries embraced therein, and covered
thereby, and of the changes made therein by our statute,
used this language: 'The statute' (referring to the
English statute above cited), 'it will be perceived, only
gave actions to executors and not against them, for as
against the person committing the injury the action died
with him. Chitty, 59; I Sanders 217. Our statute has

changed the English law in this respect, and has given an action both to and against executors, and by employing much broader language than the statute of Edward, seems' to have included, by express enactment, the injuries which were comprehended in that statute only by construction. The words of our statute are: ' for wrongs done to the property, rights or interest of another,' etc., with an exception of actions for slander, libel, assault and battery, or false imprisonment, and to action on the case for injuries to the person.' "

Although the words of the Missouri statute are arranged very differently from ours, we think there is no substantial difference in the scope of the statutes so far as the question here under consideration is concerned. For a full statement of the facts in *Baker's Adm'r.* v. *Crandall, supra,* see *Hornblower* v. *Crandall,* 7 Mo. App. 220; *Watson* v. *Crandall,* 7 Mo. App. 233.

In the case of *Tichenor* v. *Hayes, Adm'x.,* 41 N. J. Law 193, it was held that under the New Jersey statute a cause of action in deceit *ex delicto* survives as against the administrator of the deceased wrongdoer. The allegations in the declaration were that the plaintiff was induced, by the deceitful and fraudulent misrepresentations of the intestate to invest his money in the purchase of certain mortgages; that the representations were false and known by the intestate to be so; and that the plaintiff, relying upon them, made the investments which proved worthless. The statute of New Jersey there under consideration was: " Where any testator or intestate shall, in his or her lifetime, have taken or carried away, or converted to his or her use, the goods and chattels of any person or persons, or shall, in his or her lifetime, have committed any trespass to the person or property, real or personal, of any person or persons, such person or persons, his or her executors or administrators, shall have and maintain the same action against the executors

or administrators of such testator or intestate as he, she or they might have had or maintained against such testate or intestate." Rev. 1877, p. 396, sec. 5.

This opinion discusses at some length the liberal construction given to the statutes of Edward 3, heretofore referred to, and holds that the statute last above quoted (p. 199) of 41 N. J. L. " was plainly intended to take the place, in an improved and amplified form of the statute of Edward III, c. 7, *de bonis asportatis in vita testatoris,* and its purpose was to remove the same absurdities that had crept into the law by a technical adherence to the words rather than to the spirit of the old maxim, *actio personalis moritur cum personâ.* The substitute, and its antetype, are obviously *in pari materia.* The statute of Edward applied, according to its letter, only to goods carried away in the lifetime of the testator, but by a most liberal construction it was extended to remedy many other wrongs, some of which are referred to in the opinion in *Ten Eyck* v. *Runk,* and it would not be consistent with customary rules, I think, to refuse to exercise a like liberality in the interpretation of this substituted act."

Now while the statute of New Jersey above referred to differs much in form from our statute, and in some respects is not so broad, yet in its general aspect and viewed in the light of the evil sought to be remedied, we find that such difference as there may be between the two statutes is in the direction of greater breadth and liberality in the scope of our statute. All of the cases above cited from England and from the States of this country (except the Massachusetts cases and those following them) incline to liberal construction of such statutes as remedial statutes; and we are of the opinion that in the liberal construction which we have given to our statute we are amply supported by authority.

In our opinion the cause of action in the case at bar survived the death of defendant's testatrix; the Superior

Court erred in sustaining the demurrer to both counts of the declaration; the plaintiff's exception to the decision of the Superior Court in sustaining the demurrer is sustained; and the case is remitted to the Superior Court, with direction to overrule the demurrer, and for further proceedings.

VINCENT, J., dissenting. I am unable to agree with the majority of the court. The point raised by the demurrer is whether or not, under our statute, the action survives the death of the defendant's testatrix, Mrs. Dewing.

By Section 7, Chapter 283, General Laws, 1909, it is provided that " In addition to the causes of action and actions which at common law survive the death of the plaintiff or defendant therein, the following causes of action or actions shall also survive: " . . . " Third. Causes of action and actions of trespass and trespass on the case for damages to the person or to real and personal estate."

The adjudicated cases are practically unanimous in holding that under statutes of this character the plaintiff must show, in order to recover, that he has sustained the loss of some specific property. The authorities are not, however, in accord as to what constitutes specific property. Some cases favor a strict or narrow construction of that term, holding that it only comprehends some individualized sum of money, right or piece of property associated with the transaction from its inception or at some later period prior to its culmination, while other cases hold that the extent to which the plaintiff's estate may be found eventually to have been depleted becomes a sum sufficiently specific to effect the survival of the right of action.

The Rhode Island cases bearing upon this statute have not fully reached a point determinative of the question which is now before the court.

In *Aldrich* v. *Howard,* 8 R. I. 125, suit was brought to recover damages sustained by the plaintiff to his hotel property through the erection of a stable in such close proximity thereto as to become a nuisance. It was urged in that case that there was no injury to the real estate, and, therefore, the action did not survive the death of the defendant. The court held that there was an injury to the real estate and that the action survived. In *Reynolds* v. *Hennessy,* 17 R. I. 169, it was alleged that the defendant as mortgagee sold the mortgaged estate under the power of sale in the mortgage for a sum in excess of the mortgage debt, conveying the estate to the purchaser for the amount of the mortgage debt, fraudulently concealing from the owner of the equity of redemption, the fact of the excess, and never accounting for the same, *etc.* In *Aylsworth* v. *Curtis,* 19 R. I. 517, suit was brought to recover a sum of money for the larceny of certain personal property of the plaintiff, of which crime the defendant was alleged to have been convicted.

It will be readily observed that in the first of these cases the damage was to specific realty and that in each of the other two cases a specific and particular sum of money was involved from the outset. We must, therefore, go beyond the limits of these cases in the determination of the question before us and choose between two lines of authority, the one exemplified by the case of *Read* v. *Hatch,* 19 Pick. 47, and the other by *Tichenor* v. *Hayes,* 41 N. J. L. 193.

The statute of Massachusetts involved in the consideration of the case of *Read* v. *Hatch, supra,* provides that, " actions of trespass and trespass on the case for damage done to real or personal estate " shall survive.

The statute of New Jersey which is considered in the case of *Tichenor* v. *Hayes, supra,* provides that, " Where any testator or intestate shall, in his or her life-time, . . . have committed any trespass to the person or

property, real or personal, of any person or persons, such person or persons, his or her executors or administrators, shall have and maintain the same action against the executors or administrators of such testator or intestate as he, she or they might have had or maintained against such testator or intestate."

There are some variations in the language of these statutes when compared with each other and with our own statute, which has been earlier quoted, but I think that the meaning and intent of all three of them is practically the same, at least in so far as their construction is material to the present controversy.

The majority opinion seems to attach some importance to the fact that our earlier statute provided for " damage done to real or personal estate " and that the word " done " was omitted from later enactments. Such omission it is argued indicates an intent on the part of the legislature to sufficiently broaden the statute to cover cases like the one at bar. I can see no reason for such a conclusion. The presence of the word " done " adds nothing to the meaning or scope of the statute and its elimination deprives it of nothing. It is simply pleonastic. I can discover no difference in meaning between the expressions, " damage done to real or personal estate " and " damage to real or personal estate." That these expressions are interchangeable was fully recognized in *Aylsworth* v. *Curtis, supra,* where the court, in discussing our present statute, said, " the cause of action is the damage *done* to the personal estate of the plaintiff," *etc.* It may be more reasonably presumed that the word was omitted in the more recent enactments of our statute law because it was superfluous.

The majority of the court also finds that the Massachusetts cases are distinguishable from the case at bar and have no value as authority in the determination of the question before us for the reason that the Massachu-

setts courts have evidently been shackled by the domi-
nating force of the word " done " and compelled to adopt
a narrow construction.

It seems to me that this is an assumption which is not
warranted.  It can hardly be assumed that the Massa-
chusetts courts were restricted or controlled in their
action by the presence of a word in the statute which is
so evidently meaningless and without purpose.  I think
that all of these statutes whether the word " done " is
used or not should receive a like construction in that
regard.

The case of *Read* v. *Hatch, supra,* which has been fol-
lowed in other Massachusetts cases, was an action for
fraudulently representing a trader as in good credit by
means whereof the plaintiff was induced to sell him
goods, thereby sustaining damage, and the court said,
" It is contended that a false representation, by which
one is induced to part with his property, by a sale on
credit to an insolvent person, by means of which he is in
danger of losing it, is a damage done to him in respect
to his personal property.  But we are of opinion that this
would be a forced construction, and not conformable to
the intent of the statute.  If this were the true construc-
tion, then every injury by which one should be prevented
from pecuniary gain, or subjected to pecuniary loss,
would, directly or indirectly, be a damage to his personal
property.  But we are of opinion that it must have a
more limited construction, and be confined to damage
*done* to some specific personal estate, of which one may
be the owner."  The whole purport of the opinion in this
case is that some specific property must be involved as
distinguished from a mere pecuniary loss or the incidental
depletion of the plaintiff's personal estate in the aggre-
gate.

In the case of *Tichenor* v. *Hayes, supra,* the gravamen
of the action was certain false and fraudulent representa-

tions made by the intestate with respect to certain mort-
gages, in consequence of which the plaintiff invested
money in them, and that such securities proved worth-
less. The court in discussing the case says, among other
things, '' It is now urged in the argument of the counsel '
of the defendant, that . . . ' the true construction of
the act limits its application to injury to specific prop-
erty, real or personal, and not to such a wrong as works
no injury to any real or personal property of the plain-
tiff, but causes his estate generally to sustain a loss.'
But is this discrimination reasonable? . . . Is it a
reason or an assumption to say that the statutory ex-
pression of trespass to property, real or personal, means
damage done to some particular piece of property, and
not an injury to the property in general? If it is cor-
rect to translate the word ' trespass ' in this clause by
the word ' wrong ' it seems impossible to resist the con-
clusion that a wrong to personal property is done as
manifestly when one's personalty in the aggregate is
injured, as when some particular item of it is damnified.
The fact is, the discrimination, taken at its best, would
be but a vague and shadowy one, for it seldom, if ever,
happens that a loss falls upon a person's general estate,
except by means of an injury to some particular part of
it. Thus, if A should destroy by his carelessness bank
notes, the property of B, to the amount of $1,000 under
the rule suggested, an action would survive; but if B
lost these same bank notes through the deceit of A an
action would not survive. The idea that the legislature
intended to give transmissibility to the former of these
actions and not to the latter is absolutely not credible.''

These two cases, *Read* v. *Hatch* and *Tichenor* v. *Hayes,*
cannot be reconciled and it becomes necessary, therefore,
to determine which should be approved and followed as
setting forth the more sound and reasonable doctrine.

I think that the more reasonable conclusion is in accordance with the former case.

The words of our statute, " damages to . . . real and personal estate " can be only fairly construed as having reference to some particular piece of real property or to some property of a personal nature which can be defined or distinguished by some mark or characterization indicating its entirety and enabling the mind to comprehend it as a separate entity. Further than this there must be some existing relation between the false representations and some specific personal property to which such representations were directed or to which they had reference at the time when they were made.

If the legislature had intended that the action should survive where the injury complained of was simply a depletion of the plaintiff's property, it would have been easy to have so expressed such intention. If the act had provided that the estate of a decedent should be liable for any loss which might be incurred through false representations made by such decedent in his or her lifetime the present question could not arise. But our statute does not so provide. It provides for damage to " real and personal estate." There seems to be no question that the damage done to real estate must be to some specific parcel of real estate and that such was the intention of the legislature in passing the act. There is nothing in the language of the act from which it can be assumed or inferred that any different rule was intended in matters involving personal estate. If the estate of the decedent is liable for loss generally there is no limit to the liability which may be incurred through the false representations. The extent of such liability would depend entirely upon the amount of money which the other party, at some later period, saw fit to invest. I cannot believe that it was the intention of the legislature to create any such situation.

The reasoning in *Tichenor* v. *Hayes, supra,* seems to me to be unsound in several respects. The court in that case appears to have been carried away by a fancied inconsistency in the argument of counsel for the defendant which did not exist. The defendant contended, and I take the language as quoted by the court in its opinion, that, '' The true construction of the act limits its application to injury to specific property, real or personal, and not to such a wrong as works no injury to any real or personal property of the plaintiff, but causes his estate generally to sustain a loss.'' The court then proceeds to discuss this position of the defendant in these words: '' But is this discrimination reasonable? If, in the instance of water thrown back on to the property of a person by a dam wrongfully erected on the land of another, the word ' trespass ' in this act means ' tort ' or ' wrong,' so as to embrace the consequential injury, why should it not have the same broad sense with respect to the indirect injury inflicted by a neglect? Is it a reason or an assumption to say that the statutory expression of trespass to property, real or personal, means damage done, to some particular piece of property, and not an injury to the property in general? If it is correct to translate the word ' trespass ' . . . by the word ' wrong ' it seems impossible to resist the conclusion that a wrong to personal property is done as manifestly when one's personalty in the aggregate is injured, as when some particular item of it is damnified. The fact is, the discrimination, taken at its best, would be but a vague and shadowy one, for it seldom, if ever, happens that a loss falls upon a person's general estate, except by means of an injury to some particular part of it. Thus, if A should destroy by his carelessness bank notes, the property of B, to the amount of $1,000, under the rule suggested an action would survive, but if B lost these same bank notes through the deceit of A, an action would not survive.''

The court while apparently attempting to controvert the defendant's claim that the true construction of the act would make it applicable only where .there was an injury to specific property, undertakes to fortify its argument with illustrations which are clearly harmonious with the defendant's contention. Take the case of the dam wrongfully erected on the land of another whereby water is thrown back, the damage is consequential, but it is a damage done to a specific piece of land. Again, it would make no difference as to whether certain bank notes amounting to $1,000 were lost through careless destruction or through deceit. In either event specific personal estate would be involved and the action would survive.

When the court says that under the rule suggested by the defendant, that an action for the careless destruction of the bank notes would survive, while an action for the loss of the same bank notes through deceit would not survive, it is clearly in error. No such rule was suggested by the defendant. The suggestion of the defendant, as quoted by the court in its opinion, shows that the defendant simply claimed that the act was limited in application to injury to specific property, real or personal.

Whether the act complained of is called a " trespass " or a " wrong " in no way serves to determine the question of its necessary relationship to some specific property. If a trespass must relate to some specific property a wrong must have a similar relation.

The word " trespass " in itself signifies an injury to a person or to property directly accomplished. The conclusion of the court in *Tichenor* v. *Hayes* is reached through reasoning which is unsound and through illustrations which are misconceived, and, therefore, the rule laid down therein should not be adopted or followed by this court.

The case of *Administrator of Barrett* v. *Copeland,* 20

Vt. 244, involved the consideration of a statute which provided for the survival of actions of trespass and trespass on the case for damages done to real or personal estate. The defendant, a constable, made a false return upon an execution in his hands, whereby the plaintiff was defeated in a suit which he had commenced against the defendant for assault and battery, and had thereby been put to great expense and damage and compelled to pay large sums of money. The court said, in construing the statute, that it must be confined to actions brought to recover damages done to some specific property, and the action of the lower court dismissing the suit was affirmed on the ground that it did not survive.

In that case, at the time of the making of the false return, that act had no relation to nor was it associated with any specific property in the hands of the plaintiff's intestate, and the same is equally true regarding the alleged fraudulent representations in the case at bar.

In the case of *Reynolds* v. *Hennessy, supra,* this court said, "*Read* v. *Hatch* was an action for fraudulently recommending a trader as in good credit, whereby the plaintiff was induced to sell him goods on credit. There the tortious act did not relate to any specific property, but the damage was the indirect and remote result of it. . . . We think it is clearly deducible from all the cases that, where there is simply a tort, not otherwise affecting the estate itself than by an indirect loss, an action *ex delicto* does not survive. . . . The tortious conduct alleged was damage to specific property, and not a mere tort which simply occasioned loss."

In the case at bar, as the Superior Court has said, at the time of the tortious act of the testatrix, to wit, the fraudulent representations, there was no specific sum of money in the hands of the plaintiff to which the tortious utterances directly referred or upon which they directly acted. In the present case it can merely be ar-

gued that when the tortious act of the testatrix later resulted in some action on the part of the plaintiff, he then separated from his personal estate a sum of money which he used in the purchase of certain shares of stock in the Dewing Company.

The whole structure of the majority opinion seems to rest upon the cases of *Tichenor* v. *Hayes,* 41 N. J. L. 193; *Baker's Adm'r.* v. *Crandall,* 78 Mo. 584; and the English cases *Hatchard* v. *Mège,* 18 Q. B. D. 771; *Oakey & Sons* v. *Dalton,* 35 Ch. D. 700, and *Twycross* v. *Grant,* 4 C. P. D. 40. The fallacies and errors of the case of *Tichenor* v. *Hayes* have already been pointed out and need not be further discussed.

In *Baker's Adm'r.* v. *Crandall, supra,* the statute under consideration provided for the survival of actions, " for all wrongs done to the property, rights or interest of another," &c. It is quite apparent that such a statute is much broader in its scope than our statute, and that the former, by the use of the word " interest," might reasonably be said to comprehend cases like the one at bar, where the only result of the misrepresentations is a depletion of the plaintiff's estate.

In *Hatchard* v. *Mège* the action was brought to recover for damage done to the plaintiff's trade-mark, which is certainly a specific, definite and individualized piece of property and it is so treated in the opinion of the court. Day, J., said: " There is . . . a question whether a right of action can survive because injury to the plaintiff's trade-mark is alleged." Willis, J., said: " It seems to me that this is an allegation of direct injury to property." And Colton, J., said: "Assuming that the statement was calculated to bring the plaintiff's trade-mark into disrepute, and so damage his property, the executrix may succeed in establishing a cause of action, . . ."

*Oakey* v. *Dalton* was another case brought to recover damages for the infringement of the plaintiff's trade-

12

mark. There again the damage was to a specific piece of property. Chitty, J., in his opinion said, " The defendant has been infringing . . . the trade-mark, which is property: that is to say, injuring the property of the deceased man, and causing damage to his personal estate, which has diminished the amount of the assets." This does not mean that the action survives where there is simply a depletion of the assets generally, but a depletion of the assets arising from damage done to specific property, viz., the trade-mark.

In *Twycross* v. *Grant et al., supra,* the court had under consideration Order L., Rules 1 and 4. Rule 1 provides that, " an action shall not become abated by reason of the marriage, death, or bankruptcy of any of the parties, if the cause of action survive or continue." Rule 4 provides, " where by reason of marriage, death, or bankruptcy, or any other event occurring after the commencement of an action, and causing a change of transmission of interest or liability, or by reason of any person interested coming into existence after the commencement of the action, it becomes necessary or desirable that any person not already a party to the action should be made a party thereto . . . an order that the proceedings in the action shall be carried on between the continuing parties to the action and such new party or parties, may obtain *ex parte* on application to the court or a judge, upon an allegation of such change or transmission of interest or liability, or of such person interested having come into existence."

It will be observed that these rules materially differ from each other in phraseology and comprehensiveness. Rule 1 provides that the death of the party shall not cause an abatement of the action in cases where the cause of action survives. Rule 4 goes much farther, and is to the effect that any action causing a change of interest shall survive.

The counsel for the defendant contended in that case that Rules 1 and 4 should be read together, and, therefore, that, unless the cause of action " survives or continues," Rule 4 would not become operative. The court, however, rejected this contention and held that the action survived under Rule 4 and was capable of transmission to his personal representative. Rule 4 cannot be said to be at all similar in its provisions to the statute which we are here endeavoring to construe. The opinion of Bramwell, L. J., which the majority opinion cites at length, contains this language: " It has been contended that special damage to the estate ought to be pleaded or at least shown, before an executor can sue: I do not think so; it will be sufficient if, from the nature of the injury, it must diminish the personal assets."

I do not see how it can be assumed that the learned judge used these words except in the light of Rule 4, under which the issue in that case appears to have been solely considered and determined. That being so it does not seem to me that the case of *Twycross* v. *Grant* is of any value in pointing the way to a proper construction of our statute. Our statute does not go to the extent of holding that an action survives where the plaintiff has simply suffered a change of interest.

I think that the construction of the statute in the case of *Read* v. *Hatch, supra,* and other cases decided by the Massachusetts courts, which have been followed and approved in Vermont, *Administrator of Barrett* v. *Copeland,* 20 Vt. 244; *Bellows* v. *Admr. of Allen,* 22 Vt. 108; *Jones* v. *Estate of Ellis,* 68 Vt. 544, and in Wisconsin, *Killen* v. *Barnes,* 106 Wis. 546, more correctly interpret the meaning and intent of the law-making power and are better founded in reason and authority. Besides, this court has distinctly said in *Reynolds* v. *Hennessy, supra,* " that where there is simply a tort not otherwise affecting

the estate itself than by an indirect loss of an action *ex delicto* does not survive."

I think that the plaintiff's exception should be overruled.

*Gardner, Pirce & Thornley,* for plaintiff.
*Nathan W. Littlefield,* for defendant.