3bu105
106 528

CASE 33—INDICTMENT—JANUARY 16.

# Wilson vs. Commonwealth.

APPEAL FROM BRECKINRIDGE CIRCUIT COURT.

1. The dismission of the first indictment by the prosecuting attorney, with the presumed consent of the court, even after a jury was sworn to try the case, was certainly no bar to another indictment. There having been no trial, the accused was not, in a constitutional sense, either acquitted or "put in jeopardy."

2. The wounding contemplated by *section 2, article 6, chapter* 28, 1 *Stanton's Revised Statutes*, 382, is such as would make a homicide murder.

3. If the wounding is inflicted under such circumstances as would make a killing manslaughter only, it is a misdemeanor, punishable by fine and imprisonment in a common jail, according to *section 1, article 17, chapter* 28, 1 *Stanton's Revised Statutes*, 397.

4. As sudden heat and passion produced by mere words or any such provocation would not mitigate a homicide to manslaughter, consequently it would not reduce a wounding with intent to kill to a misdemeanor only. (*Rapp vs. Commonwealth*, 14 *B. Mon.*, 615.)

ALLEN & BRUNER and
KINCHELOE & HASWELL,                    For Appellant,
            CITED—
1 *Bishop, sec.* 149; 1 *Russell on Crimes, pp.* 118, 474.
*Criminal Code, sec.* 241.

JOHN RODMAN, Attorney General,          For Appellee,
            CITED—
*Criminal Code, sec.*, 335.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

This appeal is prosecuted to reverse a judgment sentencing the appellant to the penitentiary for two years on an indictment charging him with wounding Francis

Fryrear, in January, 1864, with an ax, willfully and maliciously, with intent to kill him.

The accused first pleaded a dismission of a former indictment for the same offense; and a demurrer to that plea having been sustained, he then pleaded not guilty, and was tried and convicted on that issue.

The dismission of the first indictment by the prosecuting attorney, with the presumed consent of the court, even after a jury was sworn to try the case, was certainly no bar to the last indictment. There having been no trial, the accused, as often adjudged by this court in similar cases, was not, in the constitutional sense, either acquitted or "put in jeopardy." The demurrer was, therefore, properly sustained.

The evidence on the trial proved that the appellant and others, meeting Fryrear, a stranger, carrying slaves, and apprehending, or pretending to apprehend, that he was, as others had often done during the war, running off slaves that he had no right to, attempted to stop him, and that he, not heeding them, went on with the slaves, all of which he owned; and, aiming to go to the house of Wm. Davis, about two miles off, he traveled briskly to elude his assailants, who pursued him. The appellant, traveling with more speed than his associates, overtook him at Davis' gate, and both entering at the same time, the appellant seized an ax at Davis' "woodpile," and each of them struggling for the ax, the appellant held it, and striking Fryrear more than once with it, wounded his head and cut a thick neckerchief protecting his throat.

Whether the conviction should be sustained depends on the true interpretation of the 2d *section of article* 6, *chapter* 28, *of Revised Statutes, page* 382; and also on the question whether the wounding was malicious.

That section provides, that "if any person shall willfully and maliciously shoot at and wound another, with

an intention to kill him, so that he does not die thereby, with a gun or other instrument loaded with a leaden bullet or other hard substance, or shall willfully and maliciously cut, strike, or stab another with a knife, sword, or *other deadly weapon*, with intention to kill, if the person so cut, stabbed or bruised, die not thereby, or shall willfully and maliciously administer poison, or attempt to poison, or administer poison to another, if death do not ensue in consequence thereof, he shall be confined in the penitentiary not less than one nor more than five years."

We cannot, as urged by the astute counsel of the appellant, restrict this enactment to such deadly weapons as are carried with the person, concealed or otherwise. The letter, context, and reason, all seem to forbid such a restrictive interpretation. If a person be wounded maliciously with a gun or knife, not carried by the wounder, but picked up for the occasion, surely he would be guilty of a crime denounced by the foregoing section. Consequently, the constructive rule, "*ejusdem generis*," does not apply to this case; and, leaving "*any other deadly weapon*" unrestricted, meaning, like administering poison, just what the words literally import. The reason of the enactment also harmonizes with the letter and context, and includes an ax as one of the deadly weapons intended.

This court, in interpreting this statute, has decided that the wounding contemplated by it must be such as would have made a homicide murder, and that, if the wounding was inflicted under such circumstances as would have made a killing manslaughter only, it would be a mere misdemeanor, punishable by fine and imprisonment in a common jail, acording to the 1*st section of article* 17*th, chapter* 28*th, Revised Statutes.*

This is obviously the true construction; and, in the same case of *Rapp vs. The Commonwealth* (14 *B. Mon.*), the court said, that as sudden heat and passion, produced by mere words, or any such provocation, would not mitigate a homicide to manslaughter, consequently, it would not reduce a wounding, with intent to kill, to a misdemeanor only.

The mistaken cause, assigned for heat and passion in this case, would not have reduced a homicide to manslaughter; and there is no pretext for assuming that the wounding was in self-defense. Fryrear, having reached a place of rescue, had no motive for assaulting the appellant, and therefore, in the absence of any testimony to the contrary, the inevitable presumption is, that the appellant first took up the ax to strike Fryrear, who only tried to take it from him to avert the impending danger which seems to have resulted from the appellants' wrongful passion, which the facts did not justify.

Had he killed Fryrear, he might have been therefore guilty of murder. And this court has no jurisdiction, on such appeals as this, to adjudge that the evidence did not authorize the verdict. Consequently, there being no error in law, we cannot, on full consideration, reverse the judgment of conviction, which is therefore affirmed.