## ROSANNA A. MOE v. T. J. SMILEY.

ERROR TO THE COURT OF COMMON PLEAS OF BRADFORD COUNTY.

Argued March 22, 1889—Decided March 25, 1889.

[To be reported.]

1. The action for damages given by §§ 18, 19, act of April 15, 1851, P. L. 674, and § 1, act of April 26, 1855, P. L. 309, to the widow, children, etc., of one whose death has been occasioned by unlawful violence or negligence, cannot be maintained against the executor or administrator of the wrongdoer.

Statement of Facts.

2. Section 21, article III. of the constitution, providing that in case of such injuries resulting in death the right of action shall survive, means that such right shall survive to the personal representatives of the injured party, not against the executor or administrator of the person whose violence or negligence occasioned the injury.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 125 July Term 1888, Sup. Ct.; court below, No. 487 September Term 1887, C. P.

On July 19, 1887, a summons in trespass issued in an action by Rosanna A. Moe, widow of Augustus R. Moe, against T. J. Smiley, administrator of Randolph Lyon, deceased. On October 20th, on motion of plaintiff's attorney, leave was granted to amend the declaration by adding that the action was brought under the acts of May 15, 1851, P. L. 674, and April 26, 1855, P. L. 309, and the damages claimed were as well for the benefit of said plaintiff as for Dora M. Cummings, M. M. Moe, James A. Moe and Hettie Moe, the only children of said Augustus R. Moe, deceased. The defendant pleaded, not guilty.

At the trial on May 14, 1888, the plaintiff showed that on July 2, 1887, Augustus R. Moe, the plaintiff's husband and the father of the beneficiaries, was engaged at an auction sale in Franklin township, when Dr. Randolph Lyon drove up and accused Moe of having $30 of his money. Moe denied this, but Lyon persisted and told Moe that if he did not give up the money he would shoot him. Moe again denied having the money and turned to walk away from Lyon, when the latter raised his gun and fired, killing Moe instantly. Lyon drove home, put up his horse and shot himself at his barn, where he was afterwards found dead. Letters of administration upon his estate were issued to the defendant.

Testimony upon the subject of damages having been given, the plaintiff rested, when the defendant moved for the entry of a judgment of compulsory nonsuit. The court, SITTSER, P. J., 44th district, holding the term, granted the motion, saying:

The act of 1851 confers a remedy whenever death shall be occasioned by unlawful violence or negligence. It does not say against whom the action is to be brought, but there is no

doubt whatever, of course, but that it means that it shall be brought against the wrongdoer.   It does not say in what way, or upon whom the unlawful violence shall be inflicted; but we read the act as if it said, whenever death shall be occasioned by personal injuries inflicted by unlawful violence or negligence, that a remedy shall be given to the personal representatives of the deceased.   Now this remedy at common law would not survive.   Of course there is no question of survivorship on the part of the plaintiff, because, as the counsel says, it is a remedy given to the widow and children, but the question of whether it will survive the death of the wrongdoer still remains.   At common law, it does not survive.   In order to make it survive we think it is necessary to point to some statute which abrogates the common law rule.   Our statute expressly excepts injuries done to the person.   We think we are obliged to grant the compulsory nonsuit, as asked for, and will give the plaintiffs a rule to show cause why it shall not be taken off.

Subsequently, after argument, the rule to show cause, etc., was discharged, when, judgment against the plaintiff for costs having been entered, the plaintiff took this writ, assigning as error the order of the court entering the judgment of nonsuit and the refusal of plaintiff's motion to vacate the judgment.

*Mr. James Wood*, for the plaintiff in error:

1. Section 19, act of April 15, 1851, P. L. 674, and the act of April 26, 1855, P. L. 309, taken together, are substantial copies of 9 and 10 Vict., c. 93, as found in Wood's Addison on Torts, § 575.   In Blake v. Midland Ry. Co., 83 E. C. L. 93, which was an action, under the English statute, in behalf of the widow of John Blake to recover damages for the death of her husband, killed by the negligence of said company, it was held " that the measure of damages is not the loss or suffering of the deceased, but the injury resulting from his death to his family."   A like interpretation has been given to our statute in Penn. R. Co. v. Zebe, 33 Pa. 329; Fink v. Garman, 40 Pa. 95.   It is manifest therefore that this action is not brought to recover damages for " wrongs done to the person."

2. If in fact this is not an action to recover damages " for wrongs done to the person," then it is saved from abatement by

Opinion of the Court.

§ 28, act of February 24, 1834, P. L. 77, providing, inter alia, that administrators shall be liable to be sued in all personal actions, except " for slander, for libel and for wrongs done to the person." Moreover, § 21, article III. of the constitution, provides that the right of action for injuries resulting in death shall survive. If this mean that the right shall survive, as well against the estate of the wrongdoer, as in favor of the estate entitled to the benefit of the action, then again the action is saved. But the action survives by force of the statutes themselves, which create " a new cause of action wholly unknown to the common law," . . . . . an original cause of action in favor of a surviving widow: Fink v. Garman, 40 Pa. 103; North Penn. R. Co. v. Robinson, 44 Pa. 178; Penn. R. Co. v. McCloskey, 23 Pa. 531.

*Mr. William Maxwell, Mr. B. M. Peck* and *Mr. D'A. Overton,* for the defendant in error, were not heard orally; their printed brief showed:

There cannot be any question that the foundation of the suit was the wrong done to the person of Augustus R. Moe. It is not the form of the action, but the substance, that furnishes the test of survivorship: 2 Addison on Torts, Wood's ed., 538. At common law if the action was founded on a tort and the wrongdoer died, the wrong and the wrongdoer were buried together: 2 Addison on Torts, Wood's ed., 538–40; Ott v. Kaufman, (Md.) 10 Cent. R. 107. Since the act of 1834, all personal actions survive, excepting actions for slander, libel and wrongs to the person: Miller v. Wilson, 24 Pa. 122; Reed v. Cist, 7 S. & R. 183; Miller v. Umbehower, 10 S. & R. 30; Clarke v. McClelland, 9 Pa. 128. The question has been ruled in New York under a similar statute: Nequisch v. Keddie, 99 N. Y. 267.

OPINION, MR. CHIEF JUSTICE PAXSON:

This record presents a novel question. It was an action in the court below to recover damages for the death of plaintiff's husband, Augustus Roderick Moe, who was murdered by one Dr. Randolph Lyon. The latter committed suicide within three hours after shooting Moe. The question is whether an action can be maintained against the administrator of the wrongdoer,

under the act of April 15, 1851, and the act of April 26, 1855. These are familiar acts, and it is not necessary to refer to them further than to say that, under the former act, whenever death shall be occasioned by unlawful violence or negligence, the widow of such deceased, or if there be no widow, the personal representatives, may maintain an action and recover damages for the death thus occasioned. The other act, that of 1855, merely designates the persons entitled to recover under the act of 1851.

It is very plain that had Dr. Lyon lived, he would have been liable to an action at the suit of this plaintiff for the loss of her husband's life, and for its value. He is dead, however, and the question is, does the right of action survive against his estate. The plaintiff in error has cited no authority for such an extraordinary proposition, for the reason doubtless that none can be found. The 28th section of the act of February 24, 1834, P. L. 77, provides as follows : " Executors or administrators shall have power to commence and prosecute all personal actions which the decedent whom they represent might have commenced and prosecuted, except actions for slander, for libel, and for wrongs done to the person ; and they shall be liable to be sued in any action, except as aforesaid, which might have been maintained against such decedent if he had lived." It will thus be seen that by the express terms of the act of 1834, an executor or administrator cannot sue for injuries to the person of a decedent, nor can an executor or administrator be sued for like wrongs committed by his decedent. This was changed by the act of 1851, above referred to, so far as to allow the widow or personal representatives of a decedent to sue for injuries resulting in death from unlawful violence or negligence, but it goes no further, and does not authorize a suit against the executor or administrator of the person guilty of such violence or negligence. Section 21 of article III. of the constitution provides that in case of such injuries resulting in death, the right of action shall survive. This provision plainly means that in such cases the right of action shall survive to the personal representatives of the injured party ; not that the action may be brought against the executor or administrator of the person whose violence or negligence occasioned the injury. In other words, it is the cause of action, not the liability, that survives.

It was urged, however, that this action was not brought for a wrong done to the person of the plaintiff's husband but to the plaintiff herself by depriving her of her husband, and Penn. R. Co. v. Zebe, 33 Pa. 318; Fink v. Garman, 40 Pa. 97; North Penn. R. Co. v. Robinson, 44 Pa. 175, and Penn. R. Co. v. McCloskey, 23 Pa. 526, were cited in support of this position. These were all actions brought against railroad companies under the act of 1851 for injuries caused by negligence, and, while there are expressions in some of the opinions which slightly give color to the above contention, they do not sustain it, nor were they intended to. They merely decide that a woman has such an interest in her husband's life, that when it is destroyed by unlawful violence or negligence, she may recover damages for his death. This is by virtue of the act of assembly: the right did not exist at common law; hence she takes no rights except those expressly given by the statute, and the right to sue the executor or administrator of the wrong-doer is not among them. It is idle to say that when a man is killed by unlawful violence it is not an injury to his person. It is for just such injuries that the act of 1851 gives the right of action to the widow, and it gives it to her because the death of her husband is a pecuniary loss to her. Indeed, it is difficult to see how the act of 1851 can be sustained upon any other grounds. And had the act gone further and given the right of action against the executor or administrator of the wrong-doer, this suit could have been sustained. But neither under the statute nor at common law can she recover in this case.

Judgment affirmed.