Morehead's Admrx., v. Bittner, &c.

CASE 61—ACTION FOR INJURY CAUSING DEATH—APRIL 29. ·

# Morehead's Administratrix v. Bittner, Etc.

APPEAL FROM WARREN CIRCUIT COURT

1. ACTION UNDER SEC. 4, KY. STATS.—Under section 4 of the Kentucky. Statutes an iron bar is a "deadly weapon."

2. SAME—REVIVOR.—An action under that section is not an "assault" within the meaning of section 10. The gravamen of the action is the injury to the widow and children and the action may be revived by them after the defendant's death against his personal representatives.

LEWIS M'QUOWN, FOR APPELLANT.

1. There was no right of action at common law for intentional killing. Winnegar, admr., v. Cen. Pass. R. Co., 85 Ky., 551; Morgan v. Thompson, 82 Ky., 383.

2. Kentucky Statutes authorizing widow and children to recover damages for death of husband and father. Act. Mar. 10, 1856 (2 Rev. Stat., 509); sec. 2, ch. 1, Gen. Stat.; sec. 4, ch. 1, Ky. Stat.; ch. 31, 2 Rev. Stat., 429.

3. Construction of statutes—the rule of *ejusdem generis*. Kennedy v. Foster, 14 Bush, 482; Com. v. Kammerer, 11 Ky. Law Rep., 777; Brooks v. Cook, 44 Mich., 617; Moore v. Settle, 82 Ky., 187; Reg. v. Whitnosh, 7 B. & C., 596; City of St. Louis v. Laughlin, 49 Mo., 559.

4. Actions for assault or trespass *vi et armis* do not survive. Ky. Stat., sec. 10, ch. 1; Perkins v. Stein & Co., 94 Ky., 433; Moe v. Smiley, 125 Pa. St., 136; s. c. 17 Atl. Rep., 228; Hamilton v. Jones, 25 N. E. R., 192; Hegerich v. Keddie, 99 N. Y., 258; Ott v. Kaufman, 68 Md., 56; Russell v. Sunbury, 37 O. St., 37.

5. When trespass *vi et armis* lies. 1 Chitty's Pl.,· (11 Am. ed.) p. 167; Smith v. Hancock, 4 Bibb., 222.

JOHN B. GRIDER, FOR APPELLEES.

Counsel stated the propositions of law relied on by counsel for appellant for reversal as follows: first: the court erred in overruling the demurrer to the petition; second: the court erred in permitting the action to be revived. Counsel thereupon discussed the two propositions in their order and against the conclusions reached by counsel for appellant, made the following citations: Ky. Stats., secs. 410, 1242, 1166, 1308, 1313; Wil-

son v. Com., 3 Bush, 105; Com. v. Branham, 8 Bush, 387; Dona-
hue v. Drexler, 82 Ky., 157; Philpot v. Com., 86 Ky., 595; Evans
v. Com., 11 Ky. Law Rep., 551; Com. v. Duncan, 91 Ky., 592.

B. F. PROCTOR, ALSO FOR THE APPELLEE.

Counsel discussed the same questions urged by counsel for ap-
pellant and combatted by his associate counsel for appellee and
made citations as follows:    Donahue   v.   Drexler,   82   Ky.,
187; Spring v. Glenn, 12 Bush, 172; Becker v. Crow, 7 Bush,
198; McLure v. Alexander, 15 Ky. Law Rep., 732; McLurg v.
Inglehart, 33 S. W. R., 80; Alexander v. Arnold, 79 Ky., 370.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

Appellees, who are the widow and children of Robert
Bittner, brought suit against J. S. Morehead, alleging that
he "wantonly and maliciously, and not in self-defense, as-
saulted, wounded, and struck and killed said Robert Bitt-
ner with a deadly weapon, a bar of iron, and from the ef-
fects of said wounding and striking said Bittner died," to
the damage of appellees.   A demurrer to the petition was
overruled.    Pending the litigation the defendant died.
His widow qualified as administratrix, and a motion was
made by appellees, and sustained, to revive the action
against her as administratrix.   A trial was had, resulting
in a verdict for appellees, and the appellant has brought
the case here for review.

No bill of exceptions was filed, but appellant's counsel
relies upon two propositions of law:

First, that the demurrer to the petition should have been
sustained, because an iron bar is not a deadly weapon,
within the meaning of section 4 of the Kentucky Statutes.

Second, That the action did not survive against the ad-
ministratrix of Morehead.

Upon the first question, counsel for appellant has sub-
mitted a most ingenious and plausible argument, upon
the theory that at common law there was no right of action
for an intentional killing; that the act of March 10, 1856,

(2 Revised Statutes, page 509, the original of Kentucky Statutes, section 4), prohibited the buying, selling, and dealing in the weapons popularly known as "colts," "brass knuckles," "slung shots," or any imitation or substitute therefor, and then gave such right of action by providing that "should any person be killed by the weapons afore-said, or any one of them, or in any other way, except in self-defense," the wife and heirs at law should have a right of action against all concerned in such killing; that in the General Statutes (chapter 1, section 6) the language of the statute was altered by giving a right of action to the widow or minor children "of a person killed by the careless, wanton or malicious use of firearms, or by any weapon popularly known as colts, brass knuckles, slung shots, or other deadly weapon, not in self-defense," and this section of the General Statutes was subsequently amended by adding to the list of weapons the words "or sand bag, or any imitation or substitute therefor;" and that the history and phraseology of the statute, and the legislative construction given it, as evidenced by the additions made thereto, show that the rule of *ejusdem generis* should be applied in its construction, so as to make the words "or other deadly weapon" apply only to the weapons enumerated in the list, and to other weapons of like character, manufactured for use as weapons, and which could be carried concealed about the person. It is further urged that, if the meaning of the section is as contended for by appellees, and it gives a right of action for killing by *any* weapon whatever, the enactment and re-enactment of the dueling statute ( 1 Revised Statutes, page 429; General Statutes, c. 32; Kentucky Statutes, section 5) would have been entirely unnecessary. A number of cases are cited illustrating the application of the *ejusdem generis*

rule; special reliance being placed upon the construction given to the statutes against gaming in Com. v. Kammerer 11 Ky. Law Rep., 777, [13 S. W., 108], and Moore v. Settle, 82 Ky., 187 [56 Am. R., 889].

There is much force in the argument. But the original statute, after prohibiting, in the first section, the sale of the enumerated weapons, and, in the second, imposing a penalty against any person who should strike, beat, wound, or bruise another with any of the weapons named in the first section, proceeded, in the third section, to give a right of action, "should any person be killed by the weapons aforesaid, or any of them, *or in any other way*, except in self-defense." Some force should be given, if possible, to the words "or in any other way;" and this can hardly be done, if they are restricted to weapons of a similar character to those enumerated, or weapons of a similar character had already expressly been included in the statute, under the words "or any imitation or substitute therefor."

The language of the third section is much more comprehensive than that of the second, where a right of action is given to a person injured by any of the weapons named in the first section.

It may be further observed that, when the act of 1856 was carried into the General Statutes, neither section 2 nor section 3 was placed under the title of that act, viz: "To Prevent the Selling and Using of Certain Weapons;" but both sections were placed under the head of "Actions in Certain Cases Allowed;" section 2 of the act of 1856 becoming section 4 of chapter 1, and section 3 becoming section 6, with the addition of the word "firearms" to the list of weapons, and with the change of the words "or in any other way" to "or other deadly weapon."

The first section of the act of 1856 is not carried into the General Statutes. In the Kentucky Statutes we find the addition of the words "or sand bag, or any imitation or substitute therefor."

The statutes as to the carrying of concealed dead-ly weapons obviously refer to things made for use as such; for in those cases the gravamen of the offense con-sisted in the nature of the weapon, and its being carried concealed. To come within the inhibition of the statute, the weapon must be of the character denounced, independ-ently of the use to which it is put. But where the gravamen consists in the use which is made of the weapon, and a penalty is imposed, or a right of action given, for injuries inflicted with a deadly weapon, the decisions in this State are not altogether in line with those of some of the other States, but the inquiry seems to be whether the weapon was deadly, in the sense that, as used, it was ca-pable of causing death; and it has been generally held that, within such statutes, a weapon was deadly, provided it was capable of being used in the manner denounced by the statute.

Of course, where the statute imposes a penalty upon any one who shall "cut, thrust or stab another person with a knife, dirk, sword or other deadly weapon, without kill-ing," etc., striking with a blacksmith's tongs is not an of-fense embraced therein, because the varieties of wounding embraced in the statute do not include such wounds as could be made by tongs. (Com. v. Hawkins, 11 Bush, 603, considering General Statutes c. 29, article 17, section 1.) 'And so it has been held that a club was not included un-der that statute.

But where, as in General Statutes c. 29, article 6, section 2 (Revised Statutes c. 28, article 6,

section 2), the language used was, "cut, strike or stab an-
other with a knife, sword or other deadly weapon," it was
held (in Com. v. Branham, 8 Bush, 387) that the words were
not restricted to weapons or instruments made for the de-
struction of life or the infliction of injury, but embraced
a chisel.

In Wilson v. Com., 3 Bush, 105, in an opinion by
Judge Robertson it was held that the language used in-
cluded an ax; that the constructive rule, *ejusdem generis*,
did not apply; and that the words "or other deadly weap-
on" were unrestricted, meaning "just what the words lit-
erally import."

In Philpot v. Com., 86 Ky., 595, [6 S. W.,
455], it was held, speaking of the words "cut, strike or
stab:" "This language has reference, First, to any in-
strument which is capable of being used for the purpose
of cutting, thrusting, or stabbing a person, and which may
be dangerous to his life, if used by the assailant for that
purpose; or, second, any instrument capable of being used
for the purpose of striking a person, and which may be
dangerous to his life, if used by the assailant for that pur-
pose.   There is no doubt that a sledge hammer falls with-
in the second class."

In Com. v. Duncan, 91 Ky., 594, [16 S. W.,
530], it was held, that under this statute a stone
might be included under the words "strike .   .   .   an-
other with a .   .   .   deadly weapon, with intention to
kill," &c.; but that, in that case, the question whether the
stone was of sufficient size to constitute it a deadly weapon,
when used in the manner in which it was used, should have
been left to the jury.

In Evans v. Commonwealth, 11 Ky. Law Rep., 551, [12
S. W., 767], it was held, in an opinion by Judge Lewis,

that a pitchfork was a deadly weapon, and that that question. need not be left to the jury.

In view of this construction of similar language, in the light of which the section has been several times substantially re-enacted, we are constrained to the conclusion that this statute intended to embrace any killing done with a weapon either in itself deadly, or deadly when used in the manner in which it was used. The demurrer was, therefore, properly overruled.

The second objection is based upon the theory that the cause of action did not survive against the personal representative, because the statute does not authorize an action against any one save the wrongdoer himself, and, further, that it was, in substance, an action for an assault, and, therefore, died with Morehead, by virtue of section 10 of the Kentucky Statutes, providing that "actions for assault, slander, criminal conversation," etc., "shall cease or die with the person injuring or injured," and great stress is laid upon the fact that the averment of the cause of action contains every element of an assault; and cases from Pennsylvania, Indiana, and other States are cited, where it was held that like actions abated at the death of the wrongdoer.

We are unable to concur with the reasoning of these cases. The doctrine in this State is based upon a different theory. It is not that the wife or minor children recover damages for the assault upon the husband or father, but as said in Donahue v. Drexler, 82 Ky., 157 [56 Am. R., 889], through Chief Justice Hargis—a case where the husband, before his death, had made a settlement and accepted a compromise for the damages done to him—"this statute creates a new grievance, a new cause of action, in which neither the deceased nor his estate has

[34]

any interest, and for which his administrator could not sue. It is based upon the wrong to the wife and children, by depriving them of their natural support and protection which the law gives them in the husband and father. The injury is to them and their rights. They have the exclusive right of action, under the statute, and are entitled personally to the results of any judgment that may be recovered."

The statute, in our view, was not designed merely to impose punishment on the wrongdoer in addition to such punishment as might be imposed under the penal laws. It was primarily a statute providing compensation for a violation of the rights of the wife and children. This being so, and the action not being in any sense an action for assault, it follows that by virtue of the very terms of section 10, Kentucky Statutes, it survives against the personal representative of the wrongdoer.

For the reasons given, the judgment is affirmed.