[L. A. No. 19536.   In Bank.   June 7, 1946.]

LOIS M. HUNT, a Minor, etc., et al., Appellants, v. LOUISE AUTHIER, as Administratrix With the Will Annexed, Respondent.

Mitchell, Silberberg & Knupp for Appellants.

Henry Brouillette and Montgomery G. Rice for Respondent.

SHENK, J.—This is an appeal by the plaintiffs from a judgment dismissing their action after the defendant's demurrer thereto had been sustained (Code Civ. Proc., § 581, subd. 3). The plaintiffs stood upon their complaint as stating a cause of action. The complaint alleges the following facts:

In December, 1943, Ephrem Mounsey killed Dr. Verne C. Hunt by deliberately shooting him with a revolver. Mounsey thereafter took his own life. Surviving Dr. Hunt were the plaintiffs, who are his widow and three minor children. They filed a claim against Mounsey's estate for $150,000 for waste and destruction of their property, property rights and estate. The claim was rejected, and the present action was filed on the claim and for the sum of $150,000 alleged to be the pecuniary loss of and damage to the property, property rights and estate of the plaintiffs.

This action was not brought under the wrongful death statute (Code Civ. Proc., § 377), for the obvious reason that the wrongdoer was dead at the time the action was commenced. That section of the code provides for an action by the heirs and representatives of one killed by the wrongful act or neglect of another "for damages against the person causing the death." Such an action, in the absence of statutory provision for its survival, has been held to abate upon the death

of the tort feasor. (*Clark* v. *Goodwin,* 170 Cal. 527 [150 P. 357, L.R.A. 1916A 1142]; *Singley* v. *Bigelow,* 108 Cal.App. 436 [291 P. 899]. See, also, *Severns* v. *California Highway Indemnity Exch.,* 100 Cal.App. 384 [280 P. 213].) Upon the death of Dr. Hunt a cause of action for wrongful death arose on behalf of the plaintiffs under section 377 and continued to exist until the tort feasor's death.

■ The plaintiffs rely on section 574 of the Probate Code to effect a survival of that cause of action, at least in part. The section reads as follows: ''Executors and administrators may maintain an action against any person who has wasted, destroyed, taken, or carried away, or converted to his own use, the property of their testator or intestate, in his lifetime, or committed any trespass on the real property of the decedent in his lifetime; and any person, or the personal representative of any person, may maintain an action against the executor or administrator of any testator or intestate who in his lifetime has wasted, destroyed, taken, or carried away, or converted to his own use, the property of any such person or committed any trespass on the real property of such person.'' That section assumes, for the purpose of its effective operation, the existence of a cause of action against the tort feasor during his lifetime on behalf of any person authorized by law then to sue him. It is contended that this is a survival statute in that it prevents the abatement, because of the death of the wrongdoer, of a cause of action which arose against him ''in his lifetime,'' and that to the extent that the detriment suffered represents a loss of an interest in property there was no abatement of the cause of action. The question is then presented whether any of the injury suffered by the plaintiffs because of the tortious killing of their decedent is an injury to property within the meaning of that section.

At common law the maxim, *Actio personalis moritur cum persona,* persisted to effect the abatement of all actions and rights of action in trespass. All actions or causes ex delicto died with the person by whom or to whom the wrong was done, with the possible exception of the survival of the injured person's estate in cases of asportation of and damage to chattels (4 Edw. III, c. 7, 1330; 25 Edw. III, c. 5, 1351), and against the tortfeasor's estate for wrongs whereby the latter was benefited. This was apparently the state of the law until 1833 (see 29 Columb.L.Rev. 239 et seq.), when by the statute of 3 and 4 Will. IV, c. 42, causes of action for injuries to real

estate survived to the personal representative of the deceased owner, and causes for injuries to real and personal property survived against the representatives of the deceased tort feasor. So that what remained of the substance of the common law rule was the nonsurvivability of causes of action for damages to the person as distinguished from damages to property. In 1846 by statute 9 and 10 Vict., c. 93, commonly known as Lord Campbell's Act, recovery was allowed to the heirs or representatives of a person killed by the wrongful act of another. Death statutes have been enacted by Legislatures of all the states, but in the absence of express provision causes of action thereunder generally have been held not to survive against the estate of the tort feasor.

The common law rule that tort actions did not survive has been looked upon with disfavor by the courts. Before the enactment of survival legislation, exceptions were created by judicial decision. (1 Am.Jur. 68.) As time went on legislation was enacted expressly providing for survival in specified cases, such as personal injury cases, and the common law rule has thereby been greatly modified. (1 Am.Jur. 73 et seq.) Some of the states have provided for the survival of all causes of action. More than half have provided for the survival of personal injury actions, some with the exception of such cases as seduction and breach of promise to marry. In others certain causes for injuries to personal relations as distinguished from injuries to the person have been entirely abolished by statute. (1 Am.Jur. 75 et seq.; Prosser on Torts, p. 953; see Civ. Code, § 43.5, abolishing actions for alienation of affection, criminal conversation, seduction of a person over the age of legal consent, breach of promise, and arrest when warrant is regular on its face.)

Thus the legislative tendency may be said to enlarge rather than to restrict the causes of rights of action which will survive. (See 18 Cal.L.Rev. 44.)

We are not aided in the solution of the problem by numerous cases similar to *Clark* v. *Goodwin* (1915), *supra* (170 Cal. 527), holding that causes of action based on death alone do not survive against the tort feasor's estate. The courts in *Devine* v. *Healy*, 241 Ill. 34 [89 N.E. 251]; *Gemmill* v. *Smith*, 274 Ill. 87 [113 N.E. 27]; *Hackensack Trust Co.* v. *Vanden Berg*, 88 N.J.L. 518 [97 A. 148]; *Levin* v. *Muser*, 107 Neb. 230 [185 N.W. 431]; *Anderson* v. *Wirkman*, 67 Mont. 176 [215

P. 224]; *Morehead* v. *Bittner*, 106 Ky. 523 [50 S.W. 857];
*Putnam* v. *Savage*, 244 Mass. 83 [138 N.E. 808]; and *Tonkins*
v. *Cooper*, 187 N.C. 570 [122 S.E. 294], have broadly con-
strued statutes, some of them death statutes modeled on Lord
Campbell's Act, to include the survival of causes against the
estates of tort feasors on the theory that the Legislature in-
tended compensation whether or not the tort feasor survived.
In other jurisdictions the courts have construed their statutes
to exclude survival against the estates of tort feasors. (See
*Hegerich* v. *Keddie*, 99 N.Y. 258 [1 N.E. 787, 52 Am.Rep. 25];
*Davis* v. *Nichols*, 54 Ark. 358 [15 S.W. 880]; *Hamilton* v.
*Jones*, 125 Ind. 176 [25 N.E. 192]; *Moe* v. *Smiley*, 125 Pa. 136
[17 A. 228, 3 L.R.A. 341]; *Russell* v. *Sunbury*, 37 Ohio St.
372 [41 Am.Rep. 523]; *Heil* v. *Rule*, 327 Mo. 84 [34 S.W.2d
90].) In at least eight jurisdictions survival against the
tort feasor's estate in death cases is expressly provided for by
statute. (See, also, collection of statutes and cases in 1 Chi-
cago L.Rev. 102; 29 Mich.L.Rev. 969; 48 Harv.L.Rev. 1008.)

The portion of section 574 of the Probate Code pertinent
to this case was adopted from section 1584 of the Code of Civil
Procedure which prior to 1931 read as follows: "Any person
or his personal representative may maintain an action against
the executor or administrator of any testator or intestate who
in his lifetime has wasted, destroyed, taken or carried away,
or converted to his own use, the goods or chattels of any such
person, or committed any trespass on the real estate of such
person." In 1931 bills were introduced in the Legislature
looking to the enactment of provisions for the survival of
personal injury rights of action, but they failed of passage.
(See 19 Cal.L.Rev. 289 et seq.) However, the Legislature
in that year modified the rule laid down in section 1584 by
substituting the word "property" for the words "goods and
chattels" and reenacting the section in section 574 of the
Probate Code.

The statute does not use express words of "survival."
Nevertheless the section affords the right to maintain actions
after the death of those who could have been plaintiffs or
defendants if they had lived, in cases of injury to property,
and to that extent has created a departure from the common
law rule that actions ex delicto do not survive. The fact that
the complaint states facts which would have constituted a
cause of action against the tort feasor in his lifetime does not

foreclose the maintenance of the same or a similar cause of action to the extent authorized by section 574.

In *Hegerich* v. *Keddie, supra* (1885, 99 N.Y. 258), it was considered that provision for the survival of actions to recover for damage done to property rights or interests did not include survival of an action against the estate of the wrongdoer for damages for negligent death. The decision was based on a provision of the survival statute which expressly excepted actions for injuries to the plaintiff or the plaintiff's decedent. The case recognized, however, that damages to property rights and interest must be something in addition to damage caused by personal suffering. The view was expressed that neither a husband nor a wife has such an interest in the life of the spouse as would subject a person through whose act it was taken to liability for injury to property rights. The court said that assignability and survivability were convertible terms and furnished a test to determine what injuries or property rights were meant by the statute. The court also said that assuming the cause of action to be a property right, it was based upon a tort and must be governed by the rule in such causes on the theory that if such a cause of action abates, the character of the damages cannot save it. It was also observed that the complaint there involved attempted to state a cause of action arising out of death alone, and suggested no injury to property rights. The Hegerich case overruled an earlier decision (*Yertore* v. *Wiswall*, 16 How.Pr. (N.Y.) 8). In 1935 the New York Legislature provided for survival to and against representatives in personal injury and death cases. (L. 1935, c. 795.) The principle of the Hegerich case (that since injuries flowing from the wrong which caused the death of the plaintiff's decedent include injuries to the person, the action can be no more than an action to recover damages for personal injuries irrespective of how property rights are affected) is not controlling under our statute. (*Cf.*, also, *Demczuk* v. *Jenifer*, 138 Md. 488 [114 A. 471].) ▬ Nor may assignability be the test of the plaintiff's right of action against the tort feasor's estate. It is not an exclusive test under a statute which precludes abatement of the liability of the tort feasor for property damage. In the latter class of cases a test which has been applied is whether the injury affected property rights, or affected the person only. (See *Sullivan* v. *Associated Billposters & Distributors*, 6 F.2d 1000 [42 A.L.R.

503] ; *Trust Co. of Norfolk* v. *Fletcher,* 152 Va. 868 [148 S.E. 785, 73 A.L.R. 1111].) Such a test was employed in *Vragnizan* v. *Savings Union Bank & T. Co.,* 31 Cal.App. 709 [161 P. 507]. Prosser (Torts, p. 954) states the modern trend to be "definitely toward the view that the tort causes of action and liabilities are as fairly a part of the estate of either plaintiff or defendant as contract debts," and that there should be no more difficulty in proving or defending the claim than in any case where personal contract rights are deemed to survive. (See, also, 29 Mich.L.Rev. 969; 44 Harv.L.Rev. 980; 48 Harv. L.Rev. 1008; 18 Cal.L.Rev., *supra,* p. 44; 24 Cal.L.Rev. 716.)

A trend toward a liberal interpretation of a statute expressly providing for survival was noted in *Bullowa* v. *Gladding* (1917), 40 R.I. 147 [100 A. 249], where a cause of action founded on deceitful representations inducing the plaintiff's purchase of worthless stock was held to survive the death of the defendant under a statute providing for survival of causes for damages to personal estate. It has also been held that the wrongs contemplated by such statutes were not limited to wrongs to specific articles of property, but extended to wrongs by which a personal estate was injured or diminished in value. (*Baker* v. *Crandall,* 78 Mo. 584 [47 Am.Rep. 126] ; see, also, *In re Grainger,* 121 Neb. 338 [237 N.W. 153, 78 A.L.R. 597], and annotation at page 600.) Injuries which lessen the estate, although there is no injury to tangible property, survive in many jurisdictions. (See article where collection of statutes and decisions is set forth, in 29 Mich.L.Rev., p. 969 et seq.) In *Vragnizan* v. *Savings Union Bank & T. Co., supra* (1916, 31 Cal.App. 709), there was no injury to tangible property. The husband's misrepresentation of the community assets by which a property settlement was induced, and a final decree of divorce obtained, was held to be a legal injury to the wife's rights of property which survived the death of the husband.

In *Sullivan* v. *Associated Billposters & Distributors, supra* (6 F.2d 1000), a cause of action for damages to business resulting from a conspiracy in violation of the Sherman Anti-Trust Act and involving injuries to intangible items of loss of trade and future profits, was held to survive the death of the tort feasor. A cause of action to rescind a conveyance (*Lufkin* v. *Cutting,* 225 Mass. 599 [114 N.E. 822]), and a cause to rescind a contract obtained by fraud (*Purcell* v. *Purcell,* 233 Mass. 62 [123 N.E. 394]), involving no injury

to tangible property, were held to survive. In *Evans* v. *Gibson* (1934), 220 Cal. 476 [31 P.2d 389], it was held that a cause of action for damages for deceit survived against the tort feasor's estate. The court expressly distinguished the items of damage to property interest from those which were exemplary or punitive, holding that the latter did not survive since the purpose thereof was to punish the tort feasor and deter him from the commission of like wrongs in the future, and the reason therefor ceased to exist upon his death. There should be no distinction between injuries to property in cases of fraud and deceit, which are tortious acts, and injuries to property rights in other cases of tortious acts such as wrongful death. (See 29 Mich.L.Rev., *supra,* at p. 986.)

■ The change of the term "goods and chattels" to the all-inclusive word "property" in section 574 requires that the intent of the Legislature be given its proper effect by the recognition of every property right or interest as "property" within the meaning of the section, and that the waste or destruction thereof need not have been the result of a direct injury. That change clearly indicates an intent to place no restrictions or limitations on the types of property for the injury to which compensation may be recovered from the estate of the wrongdoer, and to make no distinction as to the method by which such destruction or injury is effected.

■ The definitions of the word "property" as "real and personal," and of the words "personal property," as "money, goods, chattels, things in action, and evidences of debt" (Civ. Code, § 14), do not preclude an appropriate construction of the word "property" as used in section 574. In *Ponsonby* v. *Sacramento Suburban Fruit Lands Co.,* 210 Cal. 229, at p. 232 [291 P. 167], this court said that property is a generic term, "and its meaning in any case must be determined by ascertaining the sense in which it was used. When unqualified the term is sufficiently comprehensive to include every species of estate, both real and personal, whether choate or inchoate, . . . whether corporeal or incorporeal. . . . The word is sometimes used in the sense of 'estate'. . . ." The court held that damage resulting from fraud and deceit was an injury to property, considered in the sense of a lessening or diminution of the plaintiff's estate. In *Leavitt* v. *Gibson,* 3 Cal.2d 90, at p. 102 [43 P.2d 1091], the court was careful to distinguish actions strictly ex delicto, such as actions to recover damages for personal injuries. The action in that case was

for damages for fraud and deceit, and although there was no direct damage to tangible property this court expressed the opinion that the compensatory portion of the damages to the plaintiff's "estate," as distinguished from those merely punitive, would be recoverable against a deceased tort feasor's estate. (*Cf. Evans* v. *Gibson, supra*, 220 Cal. 476. See 24 Cal.L.Rev. 479.)

In *Scott* v. *McPheeters*, 33 Cal.App.2d 629 [92 P.2d 678, 93 P.2d 562], the court quoted with approval from 50 Corpus Juris, page 736, section 7, stating that " 'Generally, the subjects of property comprise all valuable rights or interests protected by law. . . . In modern legal systems, property includes practically all valuable rights. The term is indicative and descriptive of every possible interest which a person can have, extends to every species of valuable right or interest, and comprises a vast variety of rights. The right to be protected in a person's privileges belonging to him as an individual or secured to him as a member of the commonwealth is property, as is any valuable interest in or to any object of value that a person may lawfully acquire or hold.' "

Injuries suffered by the plaintiffs by the lessening of their estate and the invasion and deprivation of their pecuniary interest and right to future support from their decedent by the commission of the wrongful act is as much a destruction of or injury to property as was involved in the foregoing cases; and the tort likewise in this case should be deemed to be an invasion of their property rights within the meaning of the present statute. Where the courts have not held such losses to be injuries to property, it has been due to a reluctance to depart from ancient judicial declarations or to the absence of a statute designed to modify the old rule of nonsurvival. The Legislature has definitely spoken by the amendment of our statute so as to enlarge the class of property rights and interests which shall receive protection in the event of the death of the wrongdoer. Where the Legislature has so provided the courts should not countenance a tortious deprivation of property without redress.

It follows that wherever a plaintiff has sustained an injury to his "estate," whether in being or expectant, as distinguished from an injury to his person, such injury is an injury to "*property*" within the meaning of that word in the present statute. ▄ The plaintiffs have therefore stated a cause of action for recovery from the defendants of the material losses

sustained, including the present value of future support from their decedent considering their respective normal life expectancies, but exclusive of any damages for such items as loss of consortium, comfort or society of the decedent.

The judgment is reversed.

Gibson, C. J., Carter, J., and Traynor, J., concurred.

SPENCE, J.—I dissent. Being one of those who would favor the enactment of appropriate legislation providing generally for the survival of practically all tort actions, it is with some reluctance that I take a position contrary to that reached in the majority opinion. The functions of this court, however, are judicial rather than legislative, and in my view the majority opinion has invaded the legislative field through the guise of judicial construction.

It is a matter of common knowledge that the question of whether our law should be changed so as to provide generally for the survival of tort actions has been for some time a highly controversial subject in this state. Legislative bills, embodying proposed general survival legislation, have been introduced at every session of the Legislature over a long period of years. Yet none of these bills has ever been enacted. Numerous law review articles have been written on the subject, some of which are cited in the majority opinion, and the writers of these articles have almost invariably been strong advocates of general survival legislation. None of these writers has suggested that any general survival legislation has ever been enacted in this state or that the adoption of the provisions of the Probate Code in 1931 (Stats. 1931, p. 587 et seq.) had the effect of changing the settled rule that an action for wrongful death did not survive the death of the tort feasor. (*Clark* v. *Goodwin,* 170 Cal. 527 [150 P. 357, L.R.A. 1916A, 1142]; see, also, *De La Torre* v. *Johnson,* 200 Cal. 754 [254 P. 1105]; *Singley* v. *Bigelow,* 108 Cal.App. 436 [291 P. 899]; *Severns* v. *California Highway Indemnity Exch.,* 100 Cal.App. 384 [280 P. 213].) Yet the majority opinion, by seizing upon the single word "property," as used in section 574 of the Probate Code, and by ignoring the context, construes that section as a general survival statute accomplishing practically everything which has been sought through the years by the sponsors of general survival legislation, and perhaps more. To these sponsors the majority

opinion will come as a distinct surprise, for they will learn for the first time that their attempts to obtain general survival legislation in each session of the Legislature held since the adoption of the Probate Code in 1931, have been wholly unnecessary, as such general survival legislation had been enacted, without coming to their attention, as part of that code. Their surprise will no doubt be shared by the legislators who voted for the enactment of the Probate Code as well as by the members of the bench and bar.

### The Wording of Section 574 of the Probate Code

Section 574 of the Probate Code, which is the section upon which the majority opinion relies, reads as follows: "Executors and administrators may maintain an action against any person who has wasted, destroyed, taken, or carried away, or converted to his own use, the property of their testator or intestate, in his lifetime, or committed any trespass on the real property of the decedent in his lifetime; and any person, or the personal representative of any person, may maintain an action against the executor or administrator of any testator or intestate who in his lifetime has wasted, destroyed, taken, or carried away, or converted to his own use, the property of any such person or committed any trespass on the real property of such person."

This section is not ambiguous and there is no need to journey beyond its plain terms in order to reach the conclusion that it has no application to the situation before us. Insofar as it relates to the survival of tort actions after the death of the tort feasor, it applies only to actions against the personal representative of a deceased tort feasor "who in his lifetime has wasted, destroyed, taken, or carried away, or converted to his own use, the property" of another "or committed any trespass on the real property" of another.

The majority opinion reaches in two steps its conclusion that the cause of action pleaded here survived the death of the tort feasor. In taking the first step, it lays the entire stress upon the word "property"; gives that word its broadest possible connotation, without regard to the words which surround and qualify it; and thereby construes the section as though it provides for the survival, after the death of the tort feasor, of any tort action involving any "injury" to any "property right" or to any "pecuniary interest" or to the "estate" of another. None of the last quoted words or phrases may be found in the language used in the section. The ma-

jority opinion then takes the second step by holding that plaintiffs had a "property right" in the duty of support owed to them by the deceased victim and that plaintiffs have therefore suffered an injury to their "estate" by the act of the deceased tort feasor. It is unnecessary to discuss the second step as the language of the section does not warrant the first step, which is essential to reaching the ultimate conclusion.

It may be freely conceded that the word "property" may be used in different senses but in *Ponsonby* v. *Sacramento Suburban Fruit Lands Co.*, 210 Cal. 229 [291 P. 167], cited in the majority opinion, it is said on page 232 that "its meaning in any case must be determined by ascertaining the sense in which it was used." And on page 233, the court concluded, with respect to the problem there involved, that "There is nothing to qualify the expression either in the code section in which it was used or in any other related section."

It is thus proper to keep in mind a cardinal rule of construction, recognized in the Ponsonby case, when reading section 574 with the purpose of determining the meaning of the word "property" as there used. That rule, supported by abundant authority, is stated in 23 California Jurisprudence, page 748, as follows: "As words do not always mean the same thing, they should not be considered separately or abstractly, but the context should be consulted for the purpose of ascertaining the precise meaning intended or the particular purpose for which a doubtful word or phrase was employed."

When section 574 is examined in the light of this rule, the words "wasted, destroyed, taken, or carried away, or converted to his own use" cannot be ignored. Those words make it clear that the word "property," as used in that section, relates only to tangible property which is capable of being "wasted, destroyed, taken, or carried away, or converted" to one's own use. In other words, the fact that the section covers only certain limited classes of tortious conduct necessarily requires that the meaning of the word "property" be limited to that class of property to which such tortious conduct may be related. It follows that the context of the section prohibits the extremely broad construction which is given to the word "property" in the majority opinion.

But assuming that it might be said that a mere reading of section 574 as a whole does not make its meaning entirely clear, it is proper to resort to the history of the section and

to the official report of the Code Commission as aids to its construction. ''The courts have given considerable weight to the notes of the code commissioners in the construction of code provisions.'' (23 Cal.Jur. 794, and cases cited.)

### Statutory Provisions Prior to 1931

Prior to the adoption of the Probate Code in 1931, substantially the same provisions that are now found in sections 573 and 574 of the Probate Code were embodied in the former sections 1582, 1583 and 1584 of the Code of Civil Procedure.

Section 1582, so far as pertinent, provided that actions ''for the recovery of any property, real or personal, or for the possession thereof, or to quiet title thereto'' could be maintained by or against executors and administrators.

Section 1583 provided that executors and administrators could maintain actions ''against any person who has wasted, destroyed, taken, or carried away, or converted to his own use, the goods of their testator or intestate, in his lifetime'' and also ''actions for trespass committed on the real estate of the decedent in his lifetime.''

Section 1584 provided that an action could be maintained ''against the executor or administrator of any testator or intestate who in his lifetime has wasted, destroyed, taken, or carried away, or converted to his own use, the goods and chattels of any such person, or committed any trespass on the real estate of such person.''

It is entirely clear from a reading of those sections of the Code of Civil Procedure, as they existed before their repeal in 1931, that they provided only for the maintenance by and against executors and administrators of certain limited types of actions involving tangible property. Those sections appear to have been nothing more than a reenactment, in statutory form, of the common law rules as modified by the English statutes, which common law rules are referred to in the majority opinion. In any event, it was held that those sections had no bearing whatever upon the question of whether an action for wrongful death survived the death of the tort feasor. (*Clark* v. *Goodwin, supra,* 170 Cal. 527; see, also, *Singley* v. *Bigelow, supra,* 108 Cal.App. 436.)

It will be noted that the terminology was not uniform. The word ''property'' was used in section 1582; the word ''goods'' was used in section 1583; and the words ''goods and chattels'' were used in section 1584.

*The 1930 Report of the Code Commission and the*
*Enactment of the Probate Code in 1931*

In 1931 the Code Commission, which was created by Stat-
utes 1929, chapter 750, filed its report proposing the adoption
of a Probate Code. (Appendix to Journals of Senate & As-
sembly, California, Forty-Ninth Session, 1931, vol. 2.)

The proposed code is found commencing at page 25 of the
report, and the proposed sections 573 and 574 are found at
page 86. It was proposed that the provisions of the former
section 1582 of the Code of Civil Procedure should be carried
into a section to be numbered 573 of the proposed Probate
Code, and that the provisions of the former sections 1583 and
1584 of the Code of Civil Procedure should be carried, with
slight changes in wording, into a single section to be numbered
574 of the proposed Probate Code. The proposed slight
changes involved making uniform use of the word ''property''
in the proposed sections 573 and 574 of the Probate Code.
Thus, it was proposed that the word ''property'' should re-
place the word ''goods,'' formerly appearing in section 1583,
and should also replace the words ''goods and chattels,''
formerly appearing in section 1584. It was also proposed
that the term ''real property'' should be substituted for the
term ''real estate,'' formerly appearing in both sections 1583
and 1584.

The absence of any intention on the part of the Code Com-
mission to propose any change in substance by the mere uni-
form use of the word ''property'' in the proposed sections is
made manifest by examining other portions of the commis-
sion's report to the Legislature. The report contains a cross-
index reference table, which is found at page 30 et seq. (see,
also, Deering's Prob. Code, Ann., p. xliii), which table pur-
ports to show the origin of the various proposals and also the
proposed changes, if any, in the existing law. On page 34, the
proposed sections 573 and 574 are listed as having their origin
in sections 1582, 1583 and 1584 of the Code of Civil Procedure
but no change in the existing law is noted. The report also
contains a statement concerning the powers and functions of
the Code Commission. On page 10, it is said: ''By the statute
creating the Code Commission, its powers are limited to pre-
paring such 'restatement as would best serve clearly and cor-
rectly to express the existing provisions of law,' and it is not
within the province of the Code Commission to embody in its
report any substantial changes in the existing law. Nor would

it be proper for the Code Commission to recommend changes where there may be real differences of opinion as to matters of policy.''

The Legislature received the Code Commission's report and, in line with the recommendations contained therein, enacted the Probate Code, including sections 573 and 574, which sections were enacted in the precise form proposed by the Code Commission. (Stats. 1931, p. 618.)

### Effect of the Enactment of Sections 573 and 574 of the Probate Code

It is entirely clear that the Probate Code was proposed ánd enacted as a recodification or revision of existing law. It does not appear that it was intended by the Code Commission or the Legislature that any change should be made in the then existing law found in sections 1582, 1583 and 1584 of the Code of Civil Procedure, and there is nothing in the wording of sections 573 and 574 of the Probate Code which indicates that these sections should be construed as effecting any such change. But if it should be conceded that the language of section 574 leaves doubt as to its meaning, this court should adhere to what was said in *De La Torre* v. *Johnson, supra,* 200 Cal. 754. It was there claimed that the provisions of section 26 of the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 831, as amended in 1919, Stats. 1919, p. 920) had the effect of causing the action to survive the death of the tort feasor. On page 760 this court said, in repudiating appellant's construction of that section: ''The justification for following appellant in so wide a departure from the long approved rules of law should rest upon express statutory language or upon inferences arising out of the language of the act under construction which are so convincing as to leave no doubt as to legislative intent.'' It therefore follows that there is no justification in the present case for giving to section 574 of the Probate Code the meaning and effect attributed to it by the majority opinion.

Support for the last mentioned conclusion is found in section 2 of the Probate Code, which specifically provides: ''The provisions of this code, so far as they are substantially the same as existing statutes, must be construed as continuations thereof, and not as new enactments.'' Sections 573 and 574 are substantially the same as the previously existing statutes, the slight changes proposed by the Code Commission being in line with its declared purpose to prepare such ''re-

statement as would best serve clearly and correctly to express the existing provisions of law."

In commenting upon section 2 of the Probate Code, the court said in *Childs* v. *Gross,* 41 Cal.App.2d 680, at page 687 [107 P.2d 424], that the rule of construction laid down in that section follows the weight of authority, and the court then quoted approvingly from 59 Corpus Juris, page 894, section 493, the following:

" 'A mere change of phraseology, or punctuation, or the addition or omission of words in the revision or codification of statutes, does not necessarily change the operation or effect thereof, and will not be deemed to do so unless the intent to make such change is clear and unmistakable. Usually a revision of statutes simply iterates the former declaration of legislative will. No presumption arises from changes of this character that the revisers or the legislature in adopting the revision intended to change the existing law; but the presumption is to the contrary, unless an intent to change it clearly appears. The reasons assigned are that the changes made by the revision may usually be accounted for by the desire to render the provisions more concise and simple, and to bring the laws into some system and uniformity.' " . . .

" 'No rule of statutory construction rests upon better reasoning than that, in the revision of statutes, alteration of phraseology, the omission or addition of words, will not necessarily change the operation or construction of former statutes. The language of the statute as revised, or the legislative intent to change the former statute, must be clear before it can be pronounced that there is a change of such statute in construction and operation. *Langford* v. *Dunklin,* 71 Ala. 594, 609 (quoting *Cole* v. *Sloss-Sheffield Steel, etc. Co.,* 65 So. 177, 178, 186 Ala. 192, Ann. Cas. 1916-E, 99).' "

Additional support for the conclusion that section 574 cannot be given the construction placed upon it in the majority opinion is found in *Gerberich* v. *Southern Cal. Edison Co.,* 26 Cal.App.2d 471 [79 P.2d 783]. That case involved an appeal from a judgment notwithstanding the verdict in an action brought by the father of an injured minor, to recover for the loss of earnings of said minor and for medical expenses incurred. The father died before trial and a special administratrix had been appointed. The court stated the point raised by said administratrix to be that "the estate of the original plaintiff became diminished in value by reason of medical expenses and loss of services and hence, it is urged

by appellant, the estate is entitled to recoup the loss." The court quoted in full sections 573 and 574 of the Probate Code, and then said at page 483: "That such an action did not survive at common law requires no citation of authority, and the sections above quoted contain no such authority."

### Authorities Cited in the Majority Opinion

No particular comment is required on the cited authorities from other jurisdictions, which authorities were decided under different statutory provisions. Reference should be made, however, to three California cases cited in the majority opinion.

*Leavitt* v. *Gibson*, 3 Cal.2d 90 [43 P. 2d 1091]; *Evans* v. *Gibson*, 220 Cal. 476 [31 P.2d 389]; and *Vragnizan* v. *Savings Union Bank & T. Co.*, 31 Cal.App. 709 [161 P. 507], were fraud cases which were decided without reference to any comparable statutory provisions. The question of the survival was discussed at length only in the Vragnizan case, and that discussion demonstrates that fraud cases occupy an anomalous position in their relation to the matter of survival. The following portion of that discussion, appearing at pages 711 and 712, shows the basis of the decisions in the fraud cases:

". . . The true test is not so much the form of the action as the nature of the cause of action. When the action arises out of a tort, unconnected with contract, and which affects the person only and not the estate—such as assault and battery, false imprisonment, malicious prosecution, personal injuries— the action is purely personal and abates with the death of the wrongdoer. But when the action is virtually founded upon contract, though nominally in tort, it survives against the tort-feasor's legal representatives. (1 Cyc. 60; 1 C.J. 340, 362; 1 R.C.L. 22; *Lee* v. *Hill*, 87 Va. 497, [24 Am.St.Rep. 666, 12 S.E. 1052]; *Payne's Appeal*, 65 Conn. 397, [48 Am. St.Rep. 215, 33 L.R.A. 418, 32 A. 948].) And in the case of a tort resulting in the wrongful acquisition of personal property, the law imposing on the wrongdoer the duty of returning that property to the owner, the obligation at common law might be treated as *quasi* contractual, and the neglect to perform it a breach of such contract; in which case the damage resulting from the tort is substantially the value of the property, and the damage resulting from the breach of contract is measured substantially in the same way. Similarly, in determining the question of survival, at common law the sub-

stantial cause of action might properly be treated as founded in contract. (1 R.C.L. 24.)''

It thus appears that in fraud cases the authorities have held that the actions survived either upon the theory that the action was founded upon contract, although involving a tort, or upon the theory that the law created a quasi contractual obligation in order to prevent unjust enrichment. These theories are somewhat similar to those underlying the opinions of this court in *Philpott* v. *Superior Court,* 1 Cal.2d 512 [36 P.2d 635, 95 A.L.R. 990], and *McCall* v. *Superior Court,* 1 Cal. 2d 527 [36 P.2d 642, 95 A.L.R. 1019]. In the present case, however, the survival of the action cannot be predicated upon either a contractual or quasi contractual theory and therefore the fraud cases are not helpful.

### *Conclusion*

It is my conclusion that the construction placed upon section 574 in the majority opinion is wholly unwarranted and erroneous. Such construction does violence to the language of the section, to the obvious intention of the Code Commission and the Legislature in proposing and enacting the section, to settled rules of construction, and to the express mandate of section 2 of the Probate Code.

The authorities cited in *Clark* v. *Goodwin, supra,* 170 Cal. 527, are but a few of the many which establish the settled rule of law that in the absence of an express statutory provision providing for survival, actions for wrongful death do not survive the death of the tort feasor. We have no such express statutory provision providing for survival in this state, and regardless of the views of this court concerning the desirability of the enactment of such legislation, it is not the function of this court to usurp the powers of the Legislature. As was said by this court in the Clark case at page 531: ''. . . Arguments as to the wisdom or justice of a plain rule of law should be addressed to the legislative department of the state, rather than to the courts, which, if they confine themselves to the limits marked for them by the constitution, will not attempt to usurp the powers of the legislative department.''

In my opinion, the judgment should be affirmed.

Edmonds, J., and Schauer, J., concurred.

Respondent's petition for a rehearing was denied July 2, 1946. Edmonds, J., Schauer, J., and Spence, J., voted for a rehearing.